**CALVARY BAPTIST CHURCH AT TYLER, Texas, Appellant,**

v.

**Jeff ADAMS et al., Appellees.**

**No. 1144.**

Court of Civil Appeals of Texas, Tyler.

Aug. 17, 1978.

Rehearing Denied Sept. 7, 1978.

Mike A. Hatchell, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Jack W. Flock, Tyler, for appellant.

Michael E. Jones, Potter, Guinn, Minton, Roberts & Ireland, H. Kelly Ireland, Tyler, for appellees.

MOORE, Justice.

This is an appeal from the issuance of a temporary injunction. Defendant, Calvary Baptist Church, purchased a 5-acre tract of land which is contiguous to Unit 12 of the Heritage South Subdivision of the City of Tyler. In connection with its project to build a church on the 5-acre tract, defendant purchased two vacant lots within Unit 12, being lots 9 and 10, which abutted the 5-acre tract along the east side. At the time the church purchased the lots they were burdened with "residential only" restrictions. Defendant drew up proposed plans for the construction of a driveway and parking facility on lots 9 and 10 and cleared the lots in preparation for the construction. Plaintiff individual homeowners residing in Unit 12 of the Heritage South Subdivision of Tyler brought suit to permanently enjoin defendant from constructing the parking lot and driveway and from doing any other activities which are not in conformity with the "residential only" restrictions.

A temporary restraining order was issued and the cause was set down for hearing on temporary injunction. Prior to that hearing, defendant filed a plea in abatement seeking a dismissal on the ground that the action was premature and without a judicial controversy. The motion was overruled and, after a hearing, the trial court entered a temporary injunction enjoining defendant from violating the restrictions until final hearing. From this order defendant appeals.

We affirm.

After the purchase of lots 9 and 10, the church developed plans for an initial phase of construction upon the 5-acre tract, which consisted of a main church building and ancillary access and parking lots. The preliminary plans included a proposal to construct a 24-foot driveway or street from the east boundary of the 5-acre tract across the south portion of lot 9, extending east to Yale Drive, the street on which all the plaintiffs reside.

Construction commenced on the 5-acre tract in April of 1977 and has proceeded

continuously. At the time of the commencement of the injunction proceeding no construction was taking place on lots 9 and 10. However, it is undisputed that defendant had laid a sewer line and a water pipeline across the lots and had cleared the lots of "forrestry, shrubbery and junk." Further, there is ample testimony showing that defendant intended to go ahead with its plans for the construction of a parking facility and driveway unless restrained.

Unit 12, of which lots 9 and 10 are a part, is burdened with a residential-only restrictive covenant, which reads, in part, as follows:

"2. LAND USE AND BUILDING TYPE.

No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than a single family residence . . .."

Also a part of the restrictions was the creation of an "Architectural Control Committee," which was vested with authority to receive plans for the proposed construction of any structure in the unit and to determine whether the same was in conformity with the restrictions. The provisions creating the committee and outlining its procedure are as follows:

"19. ARCHITECTURAL CONTROL.

No building shall be erected, placed or altered on any lot until the construction plan, front elevation, specifications and a plan showing the location of the structure have been permanently filed with and approved by the Architectural Control Committee as to materials, harmony of external design with existing structures and as to location with respect to topography and finish grade elevation. . ."

. . . . .

"21. PROCEDURE.

The Committee's approval or disapproval as required in these covenants shall be in writing. In the event the Committee fails to approve or disapprove within thirty days after plans and specifications have been submitted to it, or in any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval shall not be required and the related covenants shall be deemed to have been fully complied with. . . ."

It is undisputed that the proposed plans for any construction on lots 9 and 10 had not been submitted to the Architectural Control Committee for approval when this action was commenced.

■ Under the first point of error defendant contends that the trial court erred in overruling its plea in abatement. Defendant argues the action is not ripe for litigation and no judicial controversy exists, because at the time suit was filed the Architectural Control Committee had not passed on the plans and specifications relating to defendant's proposed construction on the two lots in question. Defendant takes the position that the individual lot owners in the restricted unit have no authority to institute suit unless and until the Architectural Control Committee has initially acted to determine the controversy. Accordingly, defendant argues there could be no judicial controversy until the occurrence of one of two things: (1) commencement of construction subsequent to an actual disapproval of plans and specifications by the control committee, or (2) an attempt by the constructing owner to bypass the administrative process altogether by commencement of a prohibited or unapproved form of construction. We find no merit in this contention.

The language of the restrictive covenant dealing with the procedure of the Architectural Control Committee specifically provides that ". . . if no suit to enjoin the construction has been commenced prior to the completion thereof, approval [by the committee] shall not be required . . .." Thus, the covenant contemplates the right of injunctive action by a homeowner regardless of whether any determination had first been made by the committee. The duty to submit the proposed construction plans to the committee and have them approved rests with the potential builder, not

with the homeowner. The body of covenantal restrictions makes it clear that homeowners are given express authority to bring a suit to restrain a violation or an attempted violation of any covenant, without any condition precedent to the commencement of the suit. See *First State Bank of Corpus Christi v. James*, 471 S.W.2d 868 (Tex.Civ. App.—Corpus Christi 1971, no writ history); *Martin v. Moore*, 562 S.W.2d 274 (Tex.Civ. App.—Austin 1978, no writ history). Appellant's first point is overruled.

In the second point defendant contends that the trial court erred in granting the temporary injunction because plaintiffs failed to prove any potential violation of the subdivision restrictions by defendant's construction upon or contemplated use of its property. Under this point defendant argues that the proposed construction is prospective and speculative and therefore does not qualify for relief by temporary injunction. We do not agree.

While an injunction will not, as a rule, issue upon mere fear, apprehension or possibility of injury, this does not mean that the remedy may not be granted to prevent future wrongs. Where the danger is probable and threatened, the party may invoke the aid of equity to prevent it, and need not delay his application for injunction until injury has actually been inflicted. 42 Am. Jur.2d Injunctions sec. 31, p. 768.

The evidence shows that prior to the time plaintiffs filed suit, defendant had theretofore laid water and sewer lines across lots 9 and 10. The evidence further shows that defendant had delivered a brochure to the plaintiffs explaining to them the proposed parking lot and driveway. Moreover, the chairman of the building committee testified that it was the intention of the defendant to construct the driveway and parking lot at some future date. There is no question, then, but that defendant manifested an intent to construct the driveway and parking lot across lots 9 and 10 in violation of the residential-only restrictions. See *Fowler v. Brown*, 535 S.W.2d 46 (Tex.Civ. App.—Waco 1976, no writ history).

The purpose of a temporary injunction is to preserve the status quo. *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962). The trial court is not only authorized, but has a duty to grant a temporary injunction when it appears that there is substantial controversy between the parties and one party is committing or threatening immediate commission of an act that will destroy the status quo before a hearing can be had on the merits. *Pendleton v. Crabtree*, 214 S.W.2d 675 (Tex.Civ.App.—Amarillo 1948, no writ history).

In considering this point it must be kept in mind that the order appealed from is a temporary, not a permanent, injunction. To be entitled to a temporary injunction the plaintiffs have the burden of proving only that they have a probable right and that they will sustain a probable injury during the pendency of the trial on the merits if the temporary injunction is not ordered. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953). The trial court has broad discretion as to the finding of such probable injury, and its order will be reversed only on a showing of a clear abuse of discretion. *Transport Co. of Texas v. Robertson Transports*, supra. We think there was adequate proof of probable and threatened injury, and the trial court was warranted in granting the temporary injunction in order to preserve the status quo pending a final determination on the merits. See *Anderson v. Tall Timbers Corp.*, 162 Tex. 450, 347 S.W.2d 592 (Tex.1961); *Chandler v. Darwin*, 281 S.W.2d 363 (Tex. Civ.App.—Dallas 1955, no writ history).

By the third point, the defendant contends that the trial court erred in granting a temporary injunction because plaintiffs failed to prove they would suffer irreparable injury as a result of the proposed construction. Defendant argues that in order to prove irreparable injury, plaintiffs had the burden of showing that completion of a proposed "structure" on the property would not only violate the restriction but would render the lots unusable, in perpetui-

ty, for residential purposes. We are not in accord with this proposition.

■■■■ The general rule is that to entitle a petitioner to injunctive relief there must be established an actual and substantial injury or an affirmative prospect thereof. *Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400 (Tex.Civ.App.—Eastland 1960, writ ref'd). The evidence introduced must also show that irreparable injury will occur before the cause can be heard on the merits, not merely that harm will occur. *Town Plaza Fabrics v. Monumental Properties,* 544 S.W.2d 775 (Tex.Civ. App.—Dallas 1976, no writ history); 43 C.J.S. Injunctions § 27, p. 815. That is to say, the jurisdiction or power to grant injunctive relief should be exercised only when intervention is essential to effectually protect property or other rights, of which equity will take cognizance against irreparable injuries. Conduct which results in destruction, or serious change in the nature of property, either physically or in the character in which it is being used, does irreparable injury and justifies interlocutory injunctive relief. *Speedman Oil Co. v. Duval County Ranch Co., Inc.,* 504 S.W.2d 923 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.); 43 C.J.S. Injunctions § 28b, p. 823. Unquestionably, the construction of a parking lot and a driveway or street within the restricted residential subdivision would interfere with the character in which the residential lots in the subdivision were used or enjoyed. In our view there was ample proof of irreparable injury.

■■■■ Even if the above conclusion should later be found to be untenable, an exception to the rule requiring proof of irreparable injury is recognized in cases in which a landowner in the subdivision seeks to enjoin a violation of a residential-only covenant. In such cases it is held that a plaintiff need not show irreparable injury where there has been a substantial breach of the covenant. *Protestant Episcopal Church Council v. McKinney,* supra; · *Ireland v. Bible Baptist Church,* 480 S.W.2d 467 (Tex.Civ.App.—Beaumont 1970, no writ history). It follows that the same holding would apply where,

as here, an affirmative prospect of a substantial breach of the covenant is shown. Thus, for this additional reason the trial court's implied finding of irreparable injury will not be disturbed. The third point is overruled.

■■■■ Under the fourth point, defendant contends that the court erred in granting the temporary injunction because plaintiffs failed to establish that they suffered an actual and substantial injury or an affirmative prospect thereof. In this connection defendant argues that a "use" of land in violation of a "residential purposes" restriction must be such a "use" that destroys the utility of the property or the status protected, and that the offending "use" must be wholly incompatible with the protected use. In essence defendant argues that its proposed construction amounts to nothing more than a "trivial" violation of the residential restriction and therefore plaintiffs failed to establish substantial injury or any affirmative prospect thereof. We fail to find any merit in this contention.

The residential-only restriction prohibits the use of any lot in the subdivision except for residential purposes. *First State Bank of Corpus Christi v. James,* supra; *Braes Manor Civic Club v. Mitchell,* 368 S.W.2d 860 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.). Obviously, the proposed parking lot and driveway or street were designed to be used for other than residential purposes. Defendant admits in its brief that had it proposed to construct a church on the lots in question, such would have amounted to a substantial violation of the restrictive covenant. Nevertheless, defendant seems to take the position that where a church builds a driveway or a parking lot on a subdivision protected by a restrictive covenant, such conduct amounts to a trivial violation, as opposed to a substantial one, and for that reason plaintiffs are not entitled to injunctive relief. We think the construction of a driveway and parking facilities, whose only purposes would be to serve the needs of the church, would amount to a substantial violation of the restrictive covenant in the same manner as if the church had been

constructed thereon. See *Smith v. Mobile Oil Corp.*, 495 S.W.2d 628 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.); *H. E. Butt Grocery v. Justice*, 484 S.W.2d 628 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.).

As pointed out before, we think it obvious that the construction of a parking lot and a driveway or street in a subdivision protected by a residential-only use would substantially interfere with the use and enjoyment of the other lots in the subdivision devoted solely to residential use. Consequently, we think the trial court was authorized to conclude that the defendant's proposed construction plan, if carried out, would result in substantial injury to the plaintiffs. The fourth point is overruled.

By the fifth point defendant contends that the order granting the temporary injunction is in error to the extent it applies to lot 10. Under this point defendant asserts that the evidence fails to show that any construction was contemplated with regard to lot 10. Contrary to such contention we think there was ample evidence of defendant's intention to utilize both lots 9 and 10 for its construction activities as hereinabove noted. Accordingly, the fifth point is overruled.

The judgment of the trial court is affirmed.