CANDLELIGHT HILLS CIVIC
ASSOCIATION, INC.,
Appellant,

v.

Gerald L. GOODWIN, Appellee.

No. B14–88–512–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 15, 1988.

Rehearing Denied Jan. 12, 1989.

Michael T. Gainer, Houston, for appellant.

Andrea N. Moore, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Appellant Candlelight Hills Civic Association, Inc., a subdivision homeowners association, appeals the trial court's declaratory judgment which narrowly construed the subdivision's restrictive covenants. The lower court ruled that the restrictive covenants under which appellant collects a maintenance fund were unambiguous. In this regard, it excluded parol evidence which was offered to prove the intent allegedly expressed in the covenants. The court then found that the language of the restrictive covenants did not permit use of the maintenance fund to acquire real property. It also ruled that the homeowners' votes in each subsection within Candlelight Hills could not be pooled with votes from other subsections to determine the percentage of votes necessary to increase or expend the maintenance fund.

We find that the restrictive covenants are unambiguous and, when liberally construed pursuant to § 202.003, Tex.Prop. Code Ann. (Vernon Supp.1988), manifest the intent to allow acquisition of real property with the maintenance fund. We affirm the lower court's decision regarding the nonpooling of the subsection's votes and the inadmissibility of parol evidence, but reverse its decision disallowing the use of maintenance funds to acquire real property.

This appeal presents several issues concerning restrictive covenants and a procedural issue concerning the lower court's declaratory judgment. Appellant raises these issues in four points of error: (1) whether parol evidence was admissible to show the grantor's intent concerning the deed restrictions; (2) whether the restrictive covenants allow maintenance funds to be expended to acquire real property; (3) whether the homeowners' votes could be pooled; and (4) whether the declaratory judgment was procedurally proper.

Appellant, the subdivision homeowner's association of Candlelight Hills, was organized as a Texas non-profit corporation and is successor to the civic association created by the subdivision's restrictive covenants. Appellant's membership is composed of all lot owners and residents of the Candlelight Hills subdivision. Candlelight Hills is itself divided into six subsections with identical restrictive covenants between the subsections, save for a differing percentage vote required to alter the maintenance fees assessed. The restrictive covenants allow the assessment of maintenance fees which are collected from each homeowner and pooled to create a maintenance fund. The maintenance fund is administered by appellant pursuant to the Restrictions, Covenants, Conditions and Maintenance Charges found in each deed and pursuant to appellant's articles of incorporation, its bylaws, and the Texas Non–Profit Corporation Act. The purposes and intent of the maintenance fund are at the center of the present controversy.

Appellant sought to employ the maintenance fund to acquire a recreational facility for use by the Candlelight Hills subdivision by assuming the indebtedness of the owner. The appellant sought to acquire and

maintain this recreational facility through an increase in the annual assessment of maintenance fees, provided a sufficient number of lot owners and residents voted for the proposed acquisition. Appellee Gerald L. Goodwin, a Candlelight Hills resident, filed suit to prevent appellant's acquisition of the recreational facility. At trial, he maintained that the maintenance fund could not be used to acquire real property under the evident intent of the restrictive covenants. He also challenged appellant's actions in pooling the votes of different subsections within Candlelight Hills to tabulate the requisite percentage of votes for approval of an increase in the maintenance assessment.

In response to appellee's suit, the trial court ruled that the restrictive covenants were unambiguous and did not intend the use of maintenance fees to acquire real property. It excluded deposition testimony of the developer of Candlelight Hills regarding his alleged intent as expressed in the restrictive covenants. It also ruled that the restrictive covenants did not permit the pooling of votes between the different subsections. From that judgment, appellant brings this appeal on four points of error.

■ Our determination of appellant's points of error are contingent upon a more fundamental finding as to whether the restrictive covenants are ambiguous. We have long held that the issue of whether an instrument is ambiguous is a question of law. *Chambers v. Huggins*, 709 S.W.2d 219, 221 (Tex.App.—Houston [14th Dist.] 1986, no writ). We find that the lower court correctly ruled that the restrictive covenants are unambiguous.

■ Appellant asserts that the deposition of T.D. Gardner, the developer of Candlelight Hills, was admissible to show the alleged intent of the restrictive covenants. The admissibility of parol evidence hinges upon the ambiguity of the restrictive covenants. The court is not looking for the subjective intent of the developer; instead, it is the objective intent, the intent expressed or apparent in the writing which is sought. *Cherokee Water Company v.*

*Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982). We find the trial court properly excluded the developer's deposition, as this was parol evidence regarding his subjective intent. Since the deed is not ambiguous on its face, extrinsic evidence is not admissible. *Sun Oil v. Madeley*, 626 S.W.2d 726, 731–32 (Tex.1981). Therefore, the developer's deposition was not admissible to alter the expressed intent. Point of error number two is overruled.

■ Once determined unambiguous, the entire instrument in which the restrictive covenants are found is construed as a matter of law and not one of fact. We note that rules of construction require that: 1) a deed will be enforced as written, even if it does not express original intent; 2) where there is no ambiguity, the entire instrument is reviewed to discern the intent of the party; 3) deeds are construed to confer the greatest estate to the grantee; 4) all promises and agreements are presumed to have been merged fully into and expressed by the written document; and 5) an unambiguous written document will be enforced as written and cannot be varied or contradicted by parol testimony, unless clearly alleged and proven that it was procured by fraud, mistake, or accident. *Chambers*, 709 S.W.2d at 222.

■ Additional rules of construction have been added to the Property Code by the Texas Legislature, effective June 1987, which apply to "all restrictive covenants regardless of the date on which they were created." § 202.002, Tex.Prop.Code Ann. (Vernon Supp.1988). A restrictive covenant must now be liberally construed to give effect to its purposes and intent. § 202.003, Tex.Prop.Code Ann. (Vernon Supp.1988). The covenant should not be hedged about with strict construction, but given a liberal construction to carry out its evident purpose. With the preceding rules of construction in mind, we must look to the entire document and the necessary references within the document's language to discern its purposes and intent.

■ The Restrictions, Covenants, Conditions and Maintenance Charges, that is, the

restrictive covenants, contain a paragraph which establishes the general purposes for which the maintenance fund may be employed. The general purposes of the maintenance fund are enumerated in paragraph 4:6 of appellee's deed as follows:

The total fund accumulated from this annual maintenance charge, in so far as the same may be sufficient, may be applied towards the payment of maintenance expenses incurred for any or all of the following purposes: Lighting, improving and maintaining streets, parks, parkways, bridle paths and esplanades; subsidizing bus service; collecting and disposing of garbage, ashes, rubbish and the like; caring for vacant lots; payment of legal and all other expenses incurred in connection with the collection, enforcement and administration of the "MAINTENANCE FUND" and the enforcement of all covenants and restrictions for the Subdivision; employing private policemen and watchmen; *doing any other thing necessary or desirable in the opinion of the Trustees of the Association* to keep the property in the Subdivision neat and in good order, *or which they consider of general benefit to the owners or occupants of the Subdivision.* It is understood that the judgment of the Trustees of the Association in the expenditure of said funds shall be final and conclusive so long as such judgment is exercised in good faith. (emphasis added).

Paragraph 4:6 of the restrictive covenants explicitly states that the maintenance fund be expended for that which the association trustees consider of general benefit to the owners or occupants of the subdivision. Construed liberally, this language permits the use of the maintenance fund to purchase real property if such purchase will be of general benefit to the owners and occupants of the subdivision. The term "maintenance expenses" does not, standing alone, fatally limit the use of the maintenance fund; first, because the term is modified by the enumerated purposes of Paragraph 4:6, which include doing any thing of general benefit to the owners or occupants of the subdivision; and second, because it is modified by any express provisions and any necessary references found in other provisions of the restrictive covenants.

Appellee asserts that the list of purposes under paragraph 4:6 is inclusive, as well as illustrative of the type of permissible purposes for the fund. However, appellee's construction is too narrow. For example, the maintenance fund can be employed for "improvements" to parks and esplanades. The term "improvements" is construed in a property context and is commonly understood to contemplate the purchase of additional land, buildings, and construction of facilities. *See Cherokee Water Company,* 641 S.W.2d at 525. The maintenance fund, therefore, need not solely be expended to maintain the status quo of the subdivision; but may be expended to acquire real property for improvements to its parks, streets, bridle paths, parkways, and esplanades, as well as any other thing necessary or desirable of general benefit to the owners or occupants of the subdivision.

■ The intent embodied in the maintenance fund language contemplates the interaction of a non-profit corporation, its articles of incorporation, and its bylaws. Paragraph 4:2 mandates the payment of the maintenance fund to a "Texas non-profit corporation," that is, the appellant. This necessarily implicates the appellant's articles of incorporation and bylaws as well as the Texas Non–Profit Corporation Act. Thus, in addition to the express provisions in the restrictive covenants, the appellant is inhered with the powers and purposes enumerated in its articles of incorporation and bylaws. These powers and purposes necessarily modify the express provisions of the restrictive covenants via explicit reference in Paragraph 4:2, which is found in the maintenance fund section of the restrictive covenants.

■ One of appellant's overriding purposes as stated in its articles and bylaws is to maintain a residential character within Candlelight Hills. Additional, supportive purposes are directed specifically at safeguarding individual and collective property owners, encouraging improvements in the

appearance of the homes, promoting wholesome social and recreational activities, and taking concerted actions on matters affecting the welfare of the community. The purchase of real property is consistent with the promotion of social and recreational activities and with taking concerted action on matters affecting the welfare of the community.

Appellant's bylaws define "properties" as any real property owned by appellant or later "brought within the jurisdiction of the Association (appellant)." Thus, the bylaws reasonably recognize appellant's power to purchase real property. Importantly, the only money which appellant controls is the maintenance fund, thus any purchase necessarily derives from this fund. The bylaws further define "common area" as "any real property ... *owned by the Association (appellant)* for the common use and enjoyment of owners" in Candlelight Hills (emphasis added). This provision recognizes that appellant can own property in its own name for the benefit of the subdivision. One of the enumerated duties in appellant's bylaws is to cause any common area to be maintained including *improving* the streets, parks, parkways, and any other thing necessary or desirable for the general benefit of the owners of Candlelight Hills. Consistently, the intents and purposes of appellant, explicitly found in appellant's articles and bylaws, and referenced in the restrictive covenants, must necessarily allow the expenditure of the maintenance fund to acquire real property, so long as the subdivision is benefitted.

■ The interaction of the Non–Profit Corporation Act is seen in its authorization of the purchase of real property without the need for an express enumeration of this power. Art. 1396–2.03, Tex.Bus.Corp.Act (Vernon 1980). The authority to purchase real property without express enumeration is implicitly integrated into the intent of the restrictive covenants via paragraph 4:2's recognition of a "Texas non-profit corporation." Also implicitly integrated into the restrictive covenants from the Texas Non–Profit Corporation Act is the right of the appellant to purchase real property

that it might require under its purposes. Article 1396–2.02 Tex.Bus.Corp.Act. (Vernon 1980). The purposes of the present association includes maintaining the social, recreational and well-being of the subdivision and the performing of such things permitted by the restrictions, all of which is mirrored in Paragraph 4:6's authority to take action of general benefit to the subdivision.

■ Appellee asserts that the power of appellant to purchase real property is not in question; rather, it is whether "maintenance" fees may be expended for such an acquisition. He asserts that a braod construction of the term "maintenance fees" allows the indiscriminate purchase of property which will be secured by a vendors lien upon recalcitrant homeowners. However, we find that no indiscriminant authority to purchase property is possible under the restrictive covenants nor through the limitations placed upon the trustees in their articles of incorporation, their bylaws, or the Non-profit Corporation Act.

First, limitations on the indiscriminant authority to purchase real property is found first in Paragraph 4:2, which places the maintenance fund under the fiduciary umbrella of a non-profit organization pursuant to the Texas Non–Profit Corporation Act, Art. 1396–1.01 *et seq.* The second limitation is found in Paragraph 4:3 which dictates a necessary consensus for approval of an assessment increase. The third limitation is found in Paragraph 4:6 which anchors any expenditure to the subdivision's benefit. The fourth limitation is again found in Paragraph 4:6 which imposes upon the Trustees a duty of good faith. The fifth limitation upon indiscriminant purchase power is found in Paragraph 4:7 which authorizes a revocation of the maintenance assessment upon the agreement of the homeowners. The sixth limitation is found in Paragraph 4:8 which requires the membership of the homeowners association to be composed of all homeowners in Candlelight Hills. Paragraph 4:8 also contains the seventh limitation on purchase power which entitles each homeowner to one vote, regardless of whether the homeowner is

current in his payment of any maintenance fee assessed. The eighth limitation is found in Paragraph 4:8 which requires the Board of Trustees to be selected from the homeowners association. The ninth limitation is found in § 202.001 of the Texas Property Code which establishes the standard for the exercise of discretionary authority. The exercise of discretionary authority must not be arbitrary, capricious, or discriminatory.

■ Appellant admitted in oral argument that a purchase which did not increase the maintenance fees would not trigger the voting provisions necessary for approval. Yet we find that the foregoing safeguards adequately protect the homeowners from indiscriminant purchases. Additionally, the foregoing safeguards ensure that no indiscriminant authority is created through a liberal construction of the restrictive covenants. Our rules of construction dictate that every safeguard be given effect and purpose. We must give full and consistent effect to every provision within the restrictive covenants. Thus, the presence of so many safeguards evidences an intent to allow full discretionary authority to rest in the Board of Trustees. The exercise of this authority to acquire real property is consistent with this intent. It is from the body of the maintenance fund, as confined by these express safeguards, that the appellant can exercise its power to purchase real property.

■ Further evidence of the intent to allow the acquisition of real property with the maintenance fund is found in Paragraph 4:8. Paragraph 4:8 authorizes the appellant's trustees to borrow money for the purposes of the maintenance fund, giving as security present or future funds. The power to borrow money, make contracts, and incur liabilities is also found in Article 1396–2.02, Tex.Bus.Corp.Act. (Vernon 1980). Appellant's articles of incorporation establishes one of appellant's purposes as the performance of all functions and any and all things that may be permitted or required by the restrictive covenants. The coupling of explicit authority in appellant's bylaws with the express authorization of Paragraph 4:8, and reinforced by Article 1396–2.02, evidences the intent to allow the Trustees to enter into any contracts which they deem necessary to carry out the expressed purposes.

Contracts authorized by the provisions of the restrictive covenants and any necessary references include the payment of fees on a long term note for donated real property, even under appellee's restrictive reading of the covenants. We discern no difference between the payment of an installment upon a piece of donated property and the payment of an installment derived from a purchase originally initiated by appellant's trustees. The theoretical argument can be made that the actual purchase of the property is pursuant to the contract powers expressly granted to the trustees by the restrictive covenants. The payment of the installment is then merely the maintenance of the property pursuant to the more obvious list of duties of Paragraph 4:6. However, such a theoretical construction is not necessary under the Legislature's directive that we construe restrictive covenants liberally. The purposes and intent of the restrictive covenants are to benefit the subdivision. This benefit is realized through the use of the trustees' powers to contract and to administer a maintenance fund in furtherance of these covenants according to the purposes established in the restrictive covenants, the articles of incorporation, the bylaws, and the Non–Profit Corporation Act.

The Texas Legislature has mandated that restrictive covenants be liberally construed. Our construction of the restrictive covenants is consistent with the legislative mandate and consistent with the intent as expressed by the total sum of every provision. The express framework and the express safeguards of the restrictive covenants, that is, the fiduciary duty, absolute voting rights of homeowners upon a specified increase, the membership of homeowners in the association, homeowners as trustees, and the discretionary authority given to appellant's trustees evidence the intent to allow the purchase real property with the maintenance fund for the benefit

of the subdivision. Further interaction with appellant's articles, its bylaws, the Non–Profit Corporation Act, and the Property Code permit the use of the fund to purchase real property. We recognize that the framers realized that other beneficial purposes might arise which would be too numerous to enumerate in a written document to be filed of record. Therefore, the document creates an interrelated framework which allows the subdivision to benefit and grow, while its interests are protected.

Having purchased his lot subject to a deed which included a good faith discretionary power to use the maintenance fund for the benefit of the subdivision, appellee had no guarantee that the fund would never be used to purchase real property beneficial to the subdivision. The purchase of real property is consistent with the intent expressed in the restrictive covenants; it is neither unreasonable nor prohibited by law if it enhances, rather than abrogates the original plan specified in the deeds. Accordingly, we sustain the appellant's first point of error and reverse the lower court's judgment. We hold that the restrictive covenants allow the expenditure of maintenance funds for the purchase of real property.

 Appellant asserts in its third point of error that the trial court erred in declaring that votes of each subsection could not be pooled. Paragraph 4:3 of the restrictive covenants addresses voting right of homeowners and specifically ascribes voting rights on a subsection basis. The votes of the separate subsections had been pooled by appellant to determine whether the proposed expenditure of the maintenance fund had gathered the requisite percentage of votes to pass the proposal. Appellant asserts that the votes can be pooled to determine the individual subsection's percentage required by the restrictive covenants. The authority cited by appellant in support of its contention, however, is inapposite to its position. The court in *Zent v. Murrow,* 476 S.W.2d 875 (Tex.Civ.App.—Austin 1972, no writ), found that under the deeds of various subsections of a subdivision, the developer created different areas with provisions for amendment which varied according to the area. Because the different provisions for amendment applied to different sections, the evident intent of the developer was to restrict the power of one area to affect lot owners in other sections. The court in *Zent* held that the lot owners in one section were not authorized to amend the restrictions of another section. Likewise, the developer in the case before us has created several sections within Candlelight Hills subdivision by virtue of the definition located in the Preamble. Each section contains its unique requisite percentage of votes necessary to authorize an increase in maintenance fees. Though some of the requisite percentages are identical between subsections, the subsections' votes were intended to be tabulated separately to avoid "uncertainties and possible discrimination." *Zent,* 476 S.W.2d at 878.

In further support of the non-pooling of votes, it is evident that an express pooling clause exists for the pooling of the maintenance fees collected from each subsection to create a maintenance fund, as reflected in Paragraph 4:9. However, there is no equivalent pooling clause in the voting segment of the restrictive covenants. The nonexistence of a pooled vote provision, when juxtaposed with an express provision to pool maintenance funds, evidences the intent to forbid the pooling of votes. The lower court correctly construed the restrictive covenants to not intend any pooling of votes between subsections which might force a subsection to be carried against its express wishes. Therefore, we overrule appellant's third point of error.

 In its fourth point of error, appellant asserts that an injunction was the sole available means to press the lawsuit in the lower court. However, the trial court was fully vested with the power to declare the rights of a party interested under a deed or whose rights are affected by statute. § 37.004, Tex.Civ.Prac.Rem.Code Ann. (Vernon 1986). An action for a declaratory judgment is an appropriate means for seeking a determination of the validity, applicability, or enforceability of a restrictive covenant. *Jones v. Young,* 541 S.W.2d 200,

201 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). The trial court did not err in its denial of appellant's motion to dismiss. Accordingly, we overrule appellant's fourth point of error.

In summary, we hold that the intent of the restrictive covenants before us is to allow the expenditure of maintenance fees to purchase real property. The parameters of the restrictive covenants, the appellant's articles of incorporation and bylaws, the Texas Property Code, and the Non–Profit Corporation Act combine to provide this intent. We further hold that the restrictive covenants do not allow the pooling of votes between subsections as this provision is intentionally absent from the deed provisions. However, we reverse the lower court's judgment in regard to point of error number one and render judgment on this issue. In so doing, we do not pass upon the reasonableness of the acquisition as that is not before us for review. However, we note that § 202.004, Tex.Prop.Code Ann. (Vernon Supp.1988), creates a presumption of good faith unless the discretionary act is shown to be arbitrary, capricious, or discriminatory.

We reverse the judgment of the trial court that the restrictive covenant does not permit the use of the maintenance fund to purchase real property and render judgment that the restrictive covenant does permit such purchase. We affirm the remainder of the trial court's judgment except as to attorney's fees. In accordance with the findings and standards set out in the trial court's judgment as to attorney's fees, we render judgment for attorney's fees against appellee Gerald L. Goodwin and in favor of appellant Candlelight Hills Civic Association, Inc. in the amount of $6,900.00 representing $4,400.00 attorney's fees for the trial below and $2500.00 attorney's fees for the proceedings in this court.

The judgment is affirmed in part and reversed and rendered in part.