**HIGHLANDS MANAGEMENT COMPANY, INC.,**
Appellant,

v.

**FIRST INTERSTATE BANK OF TEXAS, N.A., Appellee.**

No. 14–96–01457–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 1997.

Roland Reese, Houston, for appellant.

Jeff Nobles, Kent Rutter, Houston, for appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

LEE, Justice.

This appeal arises from a suit brought by First Interstate Bank of Texas, N.A. ("First Interstate") against Highlands Management Company, Inc. ("Highlands") to enforce a restrictive covenant in a special warranty deed. The trial court granted summary judgment in favor of First Interstate; Highlands perfected this appeal. We affirm.

On December 19, 1995, First Interstate conveyed a commercial tract of real property to Highlands by special warranty deed. The deed contained restrictions, which provided the property could not be used for certain endeavors. First Interstate alleged that Highlands initially represented that it intended to use the property as a barbecue restaurant; however, Highlands subsequently decided to lease the property to the adjacent landowner. The adjacent landowner operates a "gentlemen's cabaret," known as "The Country Club," on its property and desired to lease Highlands' property for club parking to comply with a City of Houston ordinance requiring certain establishments to provide a specific number of adjacent parking spaces.

When First Interstate learned of Highlands' plan to lease the property to a sexually oriented business, it brought suit to enforce the restrictive covenant contained in the special warranty deed, which prohibited the location and operation of an adult entertainment facility upon the property. First Interstate obtained a temporary injunction prohibiting Highlands from using its property as a parking lot for a sexually oriented business. First Interstate then filed a motion for summary judgment seeking to permanently enjoin Highlands from leasing its property for use as a parking lot for the benefit of the sexually oriented business on the adjacent lot. The trial court granted summary judgment in favor of First Interstate, permanently enjoining Highlands from allowing the restricted property to be used for the benefit of or as a parking lot for an enterprise which requires the issuance of a sexually oriented business permit. Highlands perfected this appeal.

The standard for reviewing summary judgments is well settled. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Shannon v. Texas Gen. Indem. Co.,* 889 S.W.2d 662, 663 (Tex.App.—Houston [14th Dist.] 1994, no writ). Evidence favorable to the non-movant will be taken as true, every reasonable inference will be indulged in favor of the non-movant, and any doubts resolved in his favor. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). A defendant who moves for summary judgment has the burden of showing that as a matter of law no material issues of fact exist on one or more elements of the plaintiff's cause of action. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex. 1987). A summary judgment for a defendant, which disposes of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theory pled. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983); *Shannon,* 889 S.W.2d at 664.

In point of error one, Highlands claims the trial court erred in granting First Interstate's motion for summary judgment because the special warranty deed permits Highlands to lease its parking facilities to the adjacent business owner even if the adjacent business is a "cabaret." Highlands argues that there is no adult entertainment facility "located and operated upon the property," and therefore, it has not violated the covenant contained in the deed. Before we address this point, however, we must address a preservation issue with respect to point of error two.

■ In point of error two, Highlands, asserting the identical substantive arguments as in point of error one, alleges the trial court erred in denying its motion for new trial and should have granted summary judgment in its favor. In its prayer, Highlands asks for rendition, and thus, the company is obviously complaining the trial court erred in denying its cross-motion for summary judg-

ment. Generally, a party may not appeal the denial of a motion for summary judgment. An exception exists, however, when both parties move for summary judgment and the trial court grants one of the motions and denies the other. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958); *Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.,* 956 S.W.2d 562, 572 (Tex. App.—Houston [14th Dist.] 1997, n.w.h.) (citing *Montgomery v. Blue Cross and Blue Shield of Texas, Inc.,* 923 S.W.2d 147, 152 (Tex.App.—Austin 1996, writ denied)).

■ For the *Tobin* exception to apply, however, the party seeking review of the denial must have obtained a ruling on its motion. *See Coastal Cement,* 956 S.W.2d at 572; *Ward v. Northeast Texas Farmers Co-op Elevator,* 909 S.W.2d 143, 151 (Tex.App.—Texarkana 1995, writ denied); *see also* TEX. R.APP. P. 33.1(a)(2)(A). Our record does not contain an order by the trial court denying Highlands' cross-motion. Because we do not have an order evidencing the trial court's denial of Highlands' cross-motion, Highlands has not preserved the issue and the *Tobin* exception does not apply. *Id.* Accordingly, we overrule point of error two.

■ In reviewing Highlands' first point of error, we first look to the question of ambiguity. We note that neither party has specifically alleged the restrictive covenant is ambiguous.[1] Therefore, our goal is to determine whether the trial court was correct in finding that the objective intent of the covenant, or the intent expressed in the writing, would be violated if Highlands is allowed to lease the restricted property to the "cabaret." Accordingly, we turn to the rules of construction applicable to restrictive covenants.

■ In construing a restrictive covenant, the court's primary task is to determine the intent of the framers of the restrictive covenant. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 658 (Tex.1987). In determining this intent, the court must liberally construe the covenant's language to give effect to its purposes and intent. TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995). As previously stated by this court, "the covenant should not be hedged about with strict construction, but given a liberal construction to carry out its evident purpose." *Candlelight Hills Civic Ass'n, Inc. v. Goodwin,* 763 S.W.2d 474, 477 (Tex.App.—Houston [14th Dist.] 1988, writ denied). This rule of construction was added to the Texas Property Code in 1987 by the Texas Legislature, and it applies to all restrictive covenants. *Herbert v. Polly Ranch Homeowners Ass'n,* 943 S.W.2d 906, 907 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Candlelight Hills,* 763 S.W.2d at 477; *see* TEX. PROP.CODE ANN. § 202.002(a) (Vernon 1995).

The restrictive covenant in this case states, in pertinent part:

> Grantee, by its acceptance hereof, covenants and agrees, as a covenant running with the Property binding upon Grantee and Grantee's successors and assigns, that the Property will not be used for the following purposes:

> (1) Operating a pawn shop, adult entertainment facility (including, without limitation[,] massage parlor, book or video store selling or renting primarily x-rated videos or books, and retail establishments selling sexually explicit paraphernalia).

The term "adult entertainment facility" was specifically defined in the deed as: "a

---

1. By refusing to allow parol evidence to be admitted, the trial court was obviously of the opinion that the covenant was not ambiguous. An ambiguity exists in a restrictive covenant when it is susceptible of two or more meanings. *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments,* 848 S.W.2d 772, 774 (Tex.App.—Texarkana 1993, writ denied) (citing *Memorial Hollow Architectural Control v. Mapes,* 610 S.W.2d 230 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ)). The issue of whether an instru-

ment is ambiguous is a question of law. *Candlelight Hills Civic Ass'n, Inc. v. Goodwin,* 763 S.W.2d 474 477 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Notwithstanding the fact that neither party expressly raises the issue of ambiguity, we have reviewed the restrictive covenant and hold that it is not ambiguous. Once it is determined the covenant is not ambiguous, the issue of the proper construction of the covenant is a matter of law and not a question of fact. *Id.*

facility located and operated upon the property which requires the issuance of a sexually oriented business license by the City of Houston as a condition to its continued operation."

Relying on the phrase "located and operated upon the property," Highlands claims the trial court erred in its interpretation of the covenant, arguing that by its terms, the club itself must be located and operated on the restricted property to trigger the restriction. Highlands claims that because only a parking lot, and not the club itself, will be on the restricted property, the restriction is inapplicable. Highlands argues that if we apply the supreme court case of *Wilmoth*, we must reverse the trial court's judgment.

In *Wilmoth*, the supreme court stated that restrictive covenants are not favored by the courts, but they will be enforced when they are confined to a lawful purpose and clearly worded. 734 S.W.2d at 656. The court stated that all doubts were to be resolved in favor of the unrestricted use of the property, and the restrictive clause must be strictly construed against the party seeking to enforce it. *Id.* We do not disagree with the supreme court's statements or Highlands' reliance on them; however, we do disagree with Highlands' assertion that those statements mandate a reversal in this case.

In addition to the statements relied on by Highlands, the supreme court specifically stated that its "task" was to determine the intent of the framers of the restrictive covenant. *Id.* Unquestionably, the paramount issue to be resolved in any case involving the interpretation of a restrictive covenant is intent. In resolving that issue, we find *H.E. Butt Grocery Co. v. Justice*, 484 S.W.2d 628 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.), relied on by First Interstate, compelling.

In *H.E. Butt*, the property in question was subject to a restrictive covenant against "conducting thereon a foodstore or food department for the storage or sale for off-premises consumption of groceries, meats, produce, dairy products, frozen food, baking products..." 484 S.W.2d at 629. Hoping to avoid this restriction, the purchaser of the property wanted to sell it to a developer who would use the restricted property as parking

for a grocery store located *adjacent* to the restricted property. *Id.* (emphasis added). As with this case, a city ordinance required the proposed business to have a certain number of parking spaces. *Id.* at 630. Unless the developer was allowed to use the restricted property for parking, he would not be able to construct or operate the proposed grocery store. *Id.*

The purchaser brought a declaratory judgment action against H.E. Butt asking the court to declare that the restrictive covenant did not preclude the property's use for parking, ingress and/or egress for a grocery store to be located on unrestricted land adjacent to the restricted tract. *Id.* at 629. The trial court ruled in favor of the purchaser declaring that the restriction did not preclude the use of the restricted tract for parking, ingress, and/or egress for the proposed grocery store. *Id.* H.E. Butt appealed contending the trial court had improperly interpreted the restrictive covenant. *Id.*

In interpreting the covenant, the Waco Court of Appeals noted that its goal was to ascertain the intent of the parties and that in doing so, any doubts would be resolved against the imposition of the restriction. *Id.* at 630. Noting that the restriction was "against the use of any portion thereof for the purpose of conducting thereon a foodstore," the court found the purpose of the restriction was to prohibit the restricted tract from being used as any necessary part of a competing supermarket. *Id.* The court found that without the use of the restricted tract, the grocery store could not operate. *Id.* It found that parking, ingress, egress, and delivery of groceries to customers' cars are essential to conducting the business, and all of those things would take place on the restricted tract. *Id.* at 630–31. Furthermore, the court found that the Waco City Ordinance, which required a certain number of parking spaces for the proposed business, made the use of the restricted tract "an indispensable and mandatory part of conducting the proposed foodstore." *Id.* at 631.

Finally, the court stated that parking is essential to the use of any building and to the conduction of a business therein. *Id.* at 631

(citing *City of Spring Valley v. Southwestern Bell Telephone Co.*, 484 S.W.2d 579, 581 (Tex. 1972)). Thus, the court concluded the parking lot was an integral part of the proposed operation, and as such, was prohibited on the restricted tract by the plain language of the restrictions. *Id.* Accordingly, the court reversed and rendered judgment declaring the proposed use of the restricted tract violative of the restrictive covenant. *Id.*

Two similar cases, which rely on *H.E. Butt,* are also cited by First Interstate. In *Calvary Baptist Church at Tyler v. Adams,* 570 S.W.2d 469, 474 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.), the covenant at issue had a "residential-only" restriction prohibiting the use of any lot in the subdivision except for residential purposes. Calvary Baptist Church purchased a 5–acre tract of land next to the restricted subdivision and then purchased two lots within the subdivision abutting the tract. *Id.* at 471. In connection with its plan to build a church on the 5–acre tract, the church proposed to build a driveway and parking lot on the tracts within the subdivision. *Id.* The homeowners in the subdivision learned of the plan and sought an injunction to enjoin the church from constructing the parking lot and driveway. *Id.* The trial court granted the injunction and the church appealed.

The court of appeals, following the reasoning of *H.E. Butt,* affirmed the trial court's judgment stating:

> We think the construction of a driveway and parking facilities, whose only purposes would be to serve the needs of the church, would amount to a substantial violations of the restrictive covenant in the same manner as if the church had been constructed thereon.

*Id.* at 474–75.

The same principle announced in *H.E. Butt* and *Adams* was followed by the court in *Smith v. Mobil Oil Corp.,* 495 S.W.2d 628 (Tex.Civ.App.—Eastland 1973, writ ref'd n.r.e.). In that case, the purchaser of property took the property subject to a restrictive covenant stating that the land would not be "used for the storage, sale, distribution or advertising of petroleum or the products or by products thereof." *Id.* at 629. After the

sale was completed, the purchaser attempted to construct a driveway and place a water line on the restricted tract that would support and supply a new service station on an unrestricted tract adjacent to the restricted one. *Id.*

Quoting *H.E. Butt* with approval, the Eastland court declared the proposed driveway and water line would violate the restrictive covenant. *Id.* at 630. As in *H.E. Butt,* the court declared the driveway and water line necessary and integral to the conducting of the service station, and as such, violative of the covenant. *See id.*

In each of these cases, the courts recognized the *Wilmoth* principle requiring that doubts be resolved in favor of the unrestricted use of land, and the covenant construed strictly against the party seeking to enforce it. In each case, the courts looked at the document and the covenant to determine the intent of the framers. In every instance, the courts found the proposed use of the restricted tract violated the intent of the framers: to prohibit construction of a competing grocery store, *see H.E. Butt,* 484 S.W.2d at 630, a nonresidential building, *see Adams,* 570 S.W.2d at 474, and a competing service station. *See Smith,* 495 S.W.2d at 630.

■ We agree with the reasoning of the courts in each case, and find them analogous to the situation here. Using the appropriate rules of construction, we find the intent of the parties in this case was to prohibit the construction or operation of an adult entertainment facility (a business requiring the issuance of a sexually oriented business license) on the property. As in *H.E. Butt* and the other cases, the parking lot in this case is an integral part of the business that is prohibited on the restricted tract. In fact, pursuant to a City of Houston Ordinance, the "cabaret" on the unrestricted tract will not be able to operate without the use of the restricted tract for parking because there will not be sufficient parking spaces to satisfy the ordinance. *See* HOUSTON, TEX., CODE § 26–20 (1996) (stating that no permit shall be issued for construction or alteration of a building in certain categories unless the building includes construction for off-street

parking facilities on the same site). We hold it would violate the restrictive covenant if Highlands were to lease the restricted premises to the adjacent landowner as a parking lot for the "cabaret."

Highlands raises several arguments claiming *H.E. Butt* and its progeny are inapplicable, or that this court should decline to follow those cases. We find the arguments unpersuasive. Highlands first claims that *H.E. Butt, Adams,* and *Smith* are all "pre*Wilmoth*" cases, and therefore, do not apply the correct standard. *H.E. Butt* and *Smith* specifically recognized the strict construction rule. *See Smith,* 495 S.W.2d at 630; *H.E. Butt,* 484 S.W.2d at 630. Moreover, *Wilmoth* did not create a new standard for interpreting restrictive covenants; rather, the strict construction rule existed at common-law and predates *Wilmoth, H.E. Butt, Adams,* and *Smith. E.g., Settegast v. Foley Bros. Dry Goods Co.,* 114 Tex. 452, 270 S.W. 1014, 1016 (1925) ("covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises"). Thus, this argument is without merit.

Highlands next claims the *H.E. Butt* decision is "significantly factually dissimilar, contains poor legal reasoning, and ... contravenes Texas public policy." Highland contends the covenant in the *H.E. Butt* case is broader than the covenant here. This court can find no meaningful distinction between the phrase "conducting thereon" and "located and operated upon." Highlands also tries to distinguish the case factually, based on the "non-competition" interests that existed in *H.E. Butt.* We find such a distinction unremarkable, and, at any rate, there was no "competitive" interest to protect in *Adams,* yet the court still found the church's proposed parking lot would violate the covenant. *See Adams,* 570 S.W.2d at 474. Finally, we find the fact that the restricted land in *H.E. Butt* was under common ownership irrelevant for the purposes of the proper interpretation of a covenant. Like the buyer in *H.E. Butt,* Highlands purchased the property with full knowledge of the restriction. The fact that Highlands does not, in its own name, own the unrestricted tract is insignificant.

Highlands then argues the *H.E. Butt* court improperly used a "necessary-implication" test to circumvent the law and Texas public policy. We disagree. The *H.E. Butt* court did not ignore the rules of construction applicable to covenants; rather, the court clearly gave effect to that which was expressly set out in the covenant, together with that which was necessarily implied to ascertain the intentions of the parties. *See* 484 S.W.2d at 630. Using the applicable rules of construction, the court, as we have, found that the obvious intent of the framers of the restrictive covenant was to prohibit the operation of a grocery store on the restricted premises. There is nothing "troubling" about the decision. Highlands' contention that the court's decision was based on the relationship between the parties, the fact that the second purchaser knew about the covenant, and the non-competition interests involved is pure conjecture. As we interpret the opinion, the court rested its decision on ascertaining the intent of the parties, exactly what the supreme court in *Wilmoth* set as the task of a court when interpreting restrictive covenants. *See Wilmoth,* 734 S.W.2d at 658.

Finally, Highlands argues the trial court erred in granting summary judgment in favor of First Interstate because it "ignored the applicable City of Houston ordinances referenced in the deed." Highlands argues the ordinances referenced in the deed, which are those relating to the regulation of sexually oriented businesses, defined what is prohibited, rather than the parking ordinances. Highlands claims that because neither it nor the adjacent tract owner is licensed, pursuant to the applicable city ordinances, to provide adult entertainment *on the restricted tract,* the covenant will not be violated. We disagree.

The deed reference to the city ordinances governing sexually oriented businesses merely resolves the issue of whether "The Country Club" is a sexually oriented business, and thereby within the deed's definition of "adult entertainment facility." These ordinances do not, however, answer the ultimate issue in

this case: assuming the business is an "adult entertainment facility," can the restricted tract be used as a parking lot for the building, which if located on the restricted tract, would be an obvious violation of the covenant? This question is resolved by reference to the city ordinances governing parking in the city of Houston and the caselaw we have discussed.

A review of the relevant parking ordinances discloses that the business cannot be operated without the parking lot. *See* HOUSTON, TEX., CODE § 26–20 (1996). For this reason, the building, without the parking lot, cannot be operated as an "adult entertainment facility." It is the parking lot that will allow the proposed business to get its sexually oriented business license from the city of Houston, bringing it within the deed's definition of "adult entertainment facility." Plainly, pursuant to the caselaw we have cited, the parking lot proposed by Highlands is necessary to the operation of the business on the adjacent tract, and thereby prohibited by the plain terms of the restrictive covenant. Accordingly, we overrule point of error one.

In its third point of error, Highlands claims the trial court erred in sustaining First Interstate's objection to Highlands' attempt to introduce extrinsic evidence. Highlands argues the evidence is admissible in this case because such evidence is admissible "where the language of the Deed is uncertain when an attempt is made to apply it to its subject matter or, alternatively, because parol evidence is admissible to show an intent consistent with the writing." First Interstate responds by arguing the trial court acted properly because parol evidence is not admissible to show the parties' subjective intent where the language of the instrument is not ambiguous.

■■■ The admissibility of parol evidence hinges upon the ambiguity of the restrictive covenant. *Candlelight Hills,* 763 S.W.2d at 477. A court does not look for the subjective intent of the parties; instead, it is the objective intent, the intent express or apparent in the writing which is sought. *Id.* (citing *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982)). Only after a contract or other instrument is found to be ambiguous

may parol evidence be admitted to ascertain the true intention of the parties expressed in the instrument. *See Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex. 1996).

■■■ As we have already stated, neither party has alleged ambiguity, and we have found, as a matter of law, that neither the deed nor the covenant itself is ambiguous. Because there is no ambiguity, extrinsic evidence is not admissible. *See Candlelight Hills,* 763 S.W.2d at 477 (citing *Sun Oil v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981)). Therefore, we hold the trial court properly excluded the evidence offered by Highlands. We overrule Highlands' third point of error.

In its fourth and final point of error, Highlands claims the trial court erred in denying the estoppel relief it requested in its First Amended Original Answer. Apparently, Highlands is contending that First Interstate is estopped to enforce the restrictive covenant because such a position is inconsistent with the language of the restriction. Highlands bases its argument on the fact that a draft of the deed had broader language than that in the deed which was eventually executed by the parties. First Interstate responds to this by arguing that Highlands has misstated and misapplied the doctrine of promissory estoppel.

■■■ The doctrine of promissory estoppel has been explained by the supreme court as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex.1973) (quoting *Wheeler v. White,* 398 S.W.2d 93, 96 (Tex. 1965)). Thus, promissory estoppel allows the enforcement of promises to avoid injustice. *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.,* 857 S.W.2d 602, 605 (Tex.App.— Houston [1st Dist.] 1993, writ dism'd).

Highlands evidently views the language of the restrictive covenant as a "promise" upon which it has reasonably relied. Even if true, promissory estoppel would then only permit Highlands to *enforce* the promise by estopping First Interstate from *denying* the enforceability of its promise. Therefore, if First Interstate had taken the position that the covenant was not enforceable, Highlands could have enforced the covenant by pleading and proving promissory estoppel. . This, however, is not the position asserted by First Interstate. On the contrary, First Interstate has argued all along that the covenant should be enforced. The only question is the proper interpretation of the covenant, and promissory estoppel does not answer that question. Courts may not apply promissory estoppel to disregard the plain provisions of a contract. *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 293 (Tex.App.—Corpus Christi 1990, writ denied).

Highlands bases its argument in large part on the extrinsic evidence the trial court refused to consider. This is an attempt by Highlands to introduce inadmissible parol evidence under a promissory estoppel theory. It is impermissible to attempt to vary the terms of a document by inadmissible parol evidence under the guise of promissory estoppel doctrine. *Advertising and Policy Committee of the Avis Rent A Car Sys. v. Avis Rent A Car Sys.*, 780 S.W.2d 391, 398 (Tex.App.—Houston [14th Dist.] 1989), *vacated by agreement*, 796 S.W.2d 707 (Tex.1990). Texas courts have specifically held that promissory estoppel will not circumvent the parol evidence rule. *State Nat'l Bank*, 802 S.W.2d at 293. We overrule point of error four.

We hold the trial court properly granted summary judgment in favor of First Interstate, and therefore, affirm the judgment.