# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00228-CV

**Hugh Beadles and Louis Lopez, Appellants**

**v.**

**Lago Vista Property Owners Association, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN002965, HONORABLE MARGARET COOPER, JUDGE PRESIDING

This is a declaratory judgment action regarding the scope of a property owners=
association=s discretionary authority. Hugh Beadles (ABeadles@) challenges the authority of the Lago Vista
Property Owners Association, Inc., (Athe Association@) to purchase and maintain recreational facilities and
common areas using Amaintenance fees.@ Joined by Louis Lopez (ALopez@), Beadles sought a declaratory
judgment that the Association had no such authority on two grounds: (1) the Association=s voting structure,
as amended in 1992, was invalid, and (2) the Association=s continuing expenditures violated the terms of
express covenants granted in the deeds held by the two appellants. The Association moved for summary
judgment. The trial court granted summary judgment in a series of orders, some without stating grounds,
some stating that: (1) an earlier default judgment against Beadles was res judicata to his claim and (2) the
statute of limitations had run on any challenge to the 1992 voting rights amendment. Although we find that

Beadles=s declaratory judgment action is not barred by res judicata, we agree with the trial court=s disposition and will affirm.

## BACKGROUND

In 1980, developers created a large suburban development in Lago Vista, a community which at that time had no incorporated government. The plats and deeds for the various development areas provided that the builder, to be succeeded by a property owners=association, would accept the obligation of maintaining the development=s common areas. Common-area facilities were to be funded by a Amaintenance fee@ assessed on each lot. When a sufficient number of lots had been sold, the Association replaced the developer as the governing body. Throughout the 1980s and early 1990s, the Association used its authority to purchase and maintain community amenities and common areas.

About October 31, 1996, Beadles purchased 144 lots in three different areas of the Lago Vista development. He refused to pay any of the maintenance fee assessments. In late 2000, the Association filed suit to recover the four years of defaulted payments. Beadles did not file an answer; rather, he filed his own lawsuit on October 6, 2000, seeking a declaratory judgment that the assessments were an invalid exercise of the Association=s power on two grounds: (1) a change to the Association=s voting procedures in 1992, providing for *per capita* representation of each property owner rather than proportional representation based on the number of lots owned, was illegal and, therefore, rendered invalid all of the Association=s subsequent actions; and (2) the restrictive covenants included in the deeds to all of the lots purchased by Beadles prevented the Association from charging maintenance fees to support and maintain recreational property.

Ultimately, in February 2001, the Association took a default judgment against Beadles for the maintenance fees due for the years 1996-2000. Beadles did not appeal that judgment, and it is not before us for review.

After the default judgment award in the delinquent fee suit, the Association moved for partial summary judgment in Beadles=s declaratory judgment action on the grounds that: (1) the applicable statute of limitations barred any complaint about the change in voting procedures; (2) the default judgment was res judicata to Beadles=s claims; and (3) the restrictive covenants as a matter of law granted the Association authority to own and maintain the disputed property. The trial court granted the Association=s motion.

Before the district court granted partial summary judgment against Beadles, Lopez joined the suit as a co-plaintiff. Lopez had owned property in the area since 1987 and was not subject to any previous adverse rulings regarding the maintenance fee assessments. In a separate motion for partial summary judgment on Lopez=s claims, the Association asserted, among other things, that Lopez=s claim regarding the 1992 voting rights amendment was barred by the statute of limitations and that as a matter of law the restrictive covenants gave the Association authority to purchase and maintain the contested facilities. The trial court granted partial summary judgment against Lopez without stating any grounds.

Finally, the Association counterclaimed to recoup the assessments for the 2000-2001 period against Beadles and moved for summary judgment on its claim against Beadles for the 2000-2001 fees, with attorney=s fees for that claim, and final adjudication on all of appellants=remaining claims. The trial court granted the motion, awarding judgment on Beadles=s defaulted maintenance fee assessment for 2000-2001 plus attorney=s fees and disposing of all remaining claims.

On appeal, Beadles and Lopez together contend that their claims are not barred by the statute of limitations or as a matter of law. In addition, Beadles contends that the default judgment in the first delinquency suit was not res judicata to his declaratory judgment action.

## DISCUSSION

### *The Statute of Limitations*

In 1992, the Association=s board of directors amended the voting procedures for electing board members. Whereas previously each member of the association had been entitled to cast one vote for each *lot* owned, the board changed the rules to provide *per capita* representation, one vote for each *person* owning property. The amendment was properly ratified and filed with the Secretary of State. No property owners, Lopez included, challenged the change at that time.

Beadles and Lopez ask for a declaratory judgment that, under the Texas Non-Profit Corporation Act, a home owners= association may not, as a matter of law, adjust its by-laws to elect its board of directors based on *per capita* representation. *See* Tex. Rev. Civ. Stat. Ann. art. 1396-2.13(A) (West 1997) (requiring that each non-profit shareholder be entitled to *at least* one vote). A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). If the statute of limitations has run on a claim, then there exists no right to legal recovery on that claim. Tex. Civ. Prac. & Rem. Code Ann. ' 16.051 (West 1997). Therefore, if the statute of limitations has run, the trial court has no power to render a declaratory judgment and summary judgment is appropriate.

4

Civil actions are subject to a four-year statute of limitations when the legislature has provided no cause-specific limitations period. Tex. Civ. Prac. & Rem. Code Ann. ' 16.051. The statute of limitations accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).

Lopez, who joined Beadles=s suit in 2001, waited approximately nine years to challenge the change in voting procedures. In that time, he has continued to vote at Association meetings and has consistently paid his dues. Any harm to his interest in the Association became operative at the time the amendment passed in 1992; he has made no effort in the intervening time to challenge the *per capita* voting system.

Beadles, however, was not a member of the Association when the by-laws were changed and was not a party to any legal claim that might have arisen at that time. He claims that he did not become aware of the *per capita* voting structure until he attended his first Association meeting, on November 2, 1996, which would place this action, filed on October 6, 2000, within the statute. However, the change to the by-laws took place almost four years before Beadles purchased his lots. He was on at least constructive notice at the time he purchased the lots that the by-laws had already been amended and that the board of directors was elected on a *per capita* basis. *See Sherman v. Sipper*, 152 S.W.2d 319, 321 (Tex. 1941) (purchasers are expected to exercise diligence in determining whether there is any encumbrance on property to be purchased). Any change in the value or use of his property, at least regarding its relationship to the Association, took place in 1992 when the voting structure was changed.

In defense to the statute of limitations, appellants argue that the entire corporate structure of the Association, after the 1992 amendment, constitutes an illegal contract. Therefore, appellants argue,

each vote taken by the Association perpetuates the underlying cause of action and defeats the running of the limitations period. Appellants attempt to bolster this argument by citing a line of cases that deal with a contract cause of action where there is a Acontinuing breach@ that tolls the running of the statute of limitations. *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.CHouston [1st Dist.] 1984, writ ref=d n.r.e.) (statute of limitations might not begin to run until project completion or formal breach on claim regarding construction project based on completion of entire contract); *Hubble v. Lone Star Contracting Corp.*, 882 S.W.2d 379, 382 (Tex. App.CFort Worth 1994, no writ) (continuing contract doctrine addresses problems particular to construction projects). Appellants contend that the by-laws constitute a contract between the Association and the owners. Therefore, appellants conclude that applying these cases to the present circumstances extends the statute of limitations on the underlying illegal contract each time a vote is taken under the allegedly invalid procedure. We disagree.

All of the authority relied upon by appellants deals with lawsuits for damages. By contrast, this is an action for declaratory judgment. Appellants sought a declaration that the 1992 amendment instituted an illegal voting mechanism. They maintain that the Non-Profit Corporations Act does not permit *per capita* voting. Having examined the statute, we find this argument to be without merit. Any complaint regarding the change in voting procedures, therefore, arose from the procedure of amending and publishing them, which took place in 1992, more than four years before either appellant brought his complaint. We consider the continuing contract cases cited by appellants to be clearly distinguishable. We overrule appellants= first issue.

***Res Judicata***

6

Before dealing with the summary judgment regarding Lopez=s claims under the restrictive covenants, we must consider Beadles=s issue regarding the res judicata effect of the earlier default judgment.

Beadles brought this declaratory judgment action in lieu of responding to the Association=s collection suit for the 1996-2000 maintenance fee assessments. In its motion for summary judgment on the declaratory judgment action, the Association argued that Beadles=s suit was barred by the doctrine of res judicata. According to the Association, because Beadles failed to raise the construction of the restrictive deeds in the earlier suit he could not raise that argument in any subsequent suit regarding the collection of maintenance fee assessments.

Res judicata bars a party from relitigating a previous dispute when it has already had sufficient opportunity to vindicate its claims. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). By denying further legal remedy after judgment has been rendered in a lawsuit involving the same underlying facts, the doctrine ensures that plaintiffs will bring all theories of liability in one suit, rather than multiple actions, and that defendants will make any arguments necessary to their defense. *Id.* at 628-29. To determine whether an underlying claim is barred by res judicata, Texas has adopted the Atransactional test.@ *Id.* at 631 (citing *Restatement (Second) Judgments* ' 24(1) (1985)) .

The transactional test determines whether a particular set of facts can be the basis for a subsequent lawsuit. *See State & County Mut. Fire Ins. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001) (res judicata requires that a Adefendant bring as a counterclaim arising out of the *transaction or occurrence that is the subject matter* of the opposing party=s suit@ (emphasis added)). With respect to the delinquent fees, the underlying Atransaction@ is the failure to pay each year of assessments for the years 1996-2000. *See Restatement (Second) Judgments*, cmt. c, illus. 9 (1985) (each year=s tax assessment is a separate

fact situation for res judicata purposes). Beadles=s declaratory judgment action, by contrast, addresses the scope of the restrictive covenants. *See* Tex. Civ. Prac. & Rem. Code ' 37.004 (West 1997) (allowing declaratory judgment actions to clarify legal rights under written agreements); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). A declaratory judgment is not necessarily barred by earlier litigation on some factual aspect of an underlying legal agreement or situation. *See Jeanes v. Henderson*, 688 S.W.2d 100, 103-04 (Tex. 1985) (applying Aprimary right@ res judicata standard to find that prior federal judgment barred state declaratory judgment action because both involved the same underlying rights). The remedy sought in each of these actions Cone for recovery of the fees due in 1996-2000 and the other seeking interpretation of the restrictive covenants Cis different. Therefore, the subject-matter transaction of the two different lawsuits is not the same and the doctrine of res judicata does not apply.

The Association attempts to bolster its res judicata argument by pointing out that, in response to its suit for collection of maintenance fee assessments for 2000-2001, Beadles asserted as an affirmative defense the same issues he raised in his declaratory judgment action. According to the Association, this means that the issues were in the nature of *compulsory counterclaims* that either had to be raised in the first suit or be waived. *See Ingersoll Rand v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) (listing requirements for compulsory counterclaim, including that claim arise out of Athe *transaction or occurrence* that is the subject matter of the original action@ (emphasis added)). The fact that Beadles has *voluntarily* chosen to make this defense in a later suit involving a different transaction does

**8**

not in our opinion create a compulsory counterclaim within the meaning of Rule 97(a)[1] or the case law. The operative question is whether the two suits are based on the same transaction; we have already resolved that question.

We therefore sustain Beadles=s issue and conclude that res judicata does not bar his declaratory judgment action challenging the use of the maintenance fees. However, the Association moved for summary judgment on a third ground not addressed in the trial court=s opinion: that the restrictive covenants for the development affirmatively granted the Association power to purchase and maintain the disputed facilities as a matter of law. Before reversing the trial court=s determination, we will examine both Lopez=s and Beadles=s arguments on the merits, within the confines of the summary judgment order, to determine whether as a matter of law the trial court was correct in ruling that the maintenance fund expenditures were appropriate under the terms of the various restrictive covenants. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (appellate court should consider grounds for summary judgment on which trial court did not rule in the interest of judicial economy); *see also Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1 (Tex. 1999) (appellate court should consider all summary judgment grounds presented to trial court, even those denied or in separate motion).

---

[1] AA pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the *transaction or occurrence that is the subject matter of the opposing party=s claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction[.]@ Tex. R. Civ. P. 97(a) (emphasis added).

*The Effect of the Restrictive Covenants*

From the moment it was created, the Association has owned and maintained various waterfront common areas; early on, the developer gifted the land that now serves as a series of waterfront parks. In the 1980s, the common-area facilities grew to include, among other things, boat launches and a marina. An activity center was built in the early 1990s. All of the common areas in question in this lawsuit were purchased or constructed before Beadles bought his property in 1996.

Beadles and Lopez claim that, from the time they purchased their lots, Lopez in 1987 and Beadles in 1996, they have been subject to maintenance expenditures that were not envisaged by the restrictive covenants incorporated into their respective deeds. Under those restrictive covenants, appellants argue, the various common-area facilities should not have been purchased and no maintenance fee money should have been spent on their yearly upkeep. Before discussing the scope of the covenants= restrictions, we note that the latest property acquired by the Association, the activity center, was purchased before Beadles purchased his property and almost eight years before Beadles brought his declaratory judgment action. Actions regarding the breach of restrictive covenants are subject to a four-year statute of limitations when the legislature has provided no cause-specific limitations period. *Malmgren v. Inverness Forest Residents Civic Club, Inc.*, 981 S.W.2d 875, 877 (Tex. App.CHouston [1st Dist.] 1998, no pet.). As we have discussed, the running of the four-year statute of limitations extinguishes a declaratory judgment cause of action. Therefore, we review only appellants= contention that the *maintenance fees* charged each year were excessive because they provided funds to pay for the upkeep of the various common-area property held by the Association.

Each neighborhood in the Lago Vista development is subject to its own slightly different set of covenants. Beadles owns lots in three areas: Bar-K Ranch, Highland Lakes Estates, and Lago Vista Country Club Estates. Lopez owns lots only in Highland Lakes Estates. The covenant for Highland Lakes Estates is representative. It provides that the maintenance fund will be used Afor the purpose of improving and maintaining streets, parkways, easements, security protection, and all other purposes necessary or desirable in the opinion of . . . the property owners= association, to benefit the development.@[2]

In its motions for summary judgment, the Association argued that, as a matter of law, the restrictive covenants could not be read to restrict the Association=s power to purchase, own, or maintain any of the property at issue. On appeal, the movant has the burden to show that no genuine issue of material fact existed and that he is entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). We indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.* The legislature has modified the common law rule that restrictive covenants are to be strictly construed. *See* Tex. Prop. Code Ann. ' 202.003(a) (West 1995) (Aa restrictive covenant shall be liberally construed to give effect to its purposes and intent@). The interpretation of a restrictive covenant is subject to

---

[2] The covenant for the Bar-K Ranch area is substantially the same. The covenant for the Lago Vista Country Club Estates states that the maintenance fund will be used for Aimproving and maintaining the streets, parkways, easements, collecting and disposing of garbage and rubbish, maintaining and operating the swimming pool, water system and pier, or doing any other things necessary or desirable in the opinion of [the Association] to keep the Property neat, clean and in good order.@

the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). We

read the entire document as a whole, absent a finding of ambiguity, to determine its meaning as a matter of

law. *See id.* at 478; *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

Both parties agree that no issue of fact exists regarding the construction of the restrictive

covenants.[3] Appellants do not argue that the covenants are ambiguous, and, having reviewed all three, we

find no facial ambiguity. We must therefore decide whether the Association established its position on the

scope of its authority under the covenants as a matter of law.

The restrictive covenants for the Bar-K and Highland Lake Estates areas explicitly grant the

Association the power to spend maintenance fees on any project that is Anecessary or desirable.@ *See*

*Candlelight Hills Civic Ass=n v. Goodwin*, 763 S.W.2d 474, 478-79 (Tex. App.CHouston [14th Dist.]

1988, writ denied) (restrictive covenants listing purposes for which Amaintenance fund@ could be used, but

stating that fees could be used on anything homeowners= association found Anecessary or desirable,@ did not

---

[3] In his own motion for summary judgment on the declaratory judgment action, Beadles conceded that no issue of fact existed regarding the construction of the restrictive covenants. In his response to the Association=s summary judgment motion, Beadles raised no fact issues. Likewise, on appeal, Beadles and Lopez only argue that the trial court=s interpretation of the covenants was legally incorrect, not that any relevant factual dispute exists.

Beadles=s pleadings only attempted to raise issues of fact in response to the Association=s motion for summary judgment on its counterclaim for the 2000-2001 defaulted fees.

prevent homeowners= association from purchasing recreational facilities). The covenant for the Lago Vista Country Club Estates unambiguously provides that the maintenance fees will be used for amenities such as a swimming pool and a pier. This specifically indicates that the Country Club Estates covenants are intended to create a maintenance fund to support the common areas and recreational facilities. *See Hodas v. Scenic Oaks Prop. Ass=n*, 21 S.W.3d 524, 530 (Tex. App.CSan Antonio 2000, pet. denied) (property association=s by-law restricting use of one-time assessments must be read in light of overall purpose of benefitting community). More importantly, the covenants contemplate the creation of an umbrella property owners= association to serve all of the communities. All three contemplate the purchase and ownership of recreational property by the Association for the purpose of benefitting the residents of the *entire* community. The relevant statute requires us to construe the covenants in the light of their Apurposes and intent.@ Tex. Prop. Code Ann. ' 202.003. We therefore hold that it was within the Association=s discretion, as granted by the restrictive covenants, to own, purchase, and maintain the recreational facilities in question using the funds collected as a Amaintenance fee.@

In addition to modifying the standard with which we read restrictive covenants, the legislature has granted property owners= associations special deference. Tex. Prop. Code Ann. ' 202.004(a) (West 1995) (AAn exercise of discretionary authority by a property owners= association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.@). Because the Association had discretion, as a matter of law, to pay for the maintenance of its common-area property and recreational facilities using the maintenance fee assessments, the trial court correctly

**13**

determined that appellants could not support a claim against the association on that question. We overrule appellants= issue regarding the appropriateness of the maintenance fees.

*The Association=s Counterclaim*

In its final summary judgment order, the trial court awarded $8,468 to the Association for maintenance fee assessments not paid in 2000-2001 as well as attorney=s fees. Beadles raised as an affirmative defense to this counterclaim his arguments regarding the voting structure of the Association and the effect of the restrictive covenants, and on appeal simply asserts that those defenses were legally sufficient to avoid summary judgment as to the assessment of fees for the 2000-2001 period. We have already resolved these issues against Beadles. Because he raises no other point of error, the trial court=s award of the 2000-2001 fee assessments and attorney=s fees is affirmed.

**CONCLUSION**

Having considered appellants= issues, we hold that the trial court erred in ruling that Beadles=s declaratory judgment action was res judicata barred. Nevertheless, we hold that the statute of limitations has run on any challenge to the voting procedure and that the restrictive covenants, as a matter of law, grant the Association authority to purchase and maintain common areas and recreational facilities. Therefore, we affirm the trial court=s judgment against both appellants.

Mack Kidd, Justice

**14**

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed:   November 7, 2002

Do Not Publish