

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00329-CV

**C.A.U.S.E.** (A Texas Unincorporated Nonprofit Association),
Appellant

v.

**VILLAGE GREEN HOMEOWNERS ASSOCIATION, INC.**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-13299
Honorable Richard Price, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Rebeca C. Martinez, Justice
             Patricia O. Alvarez, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed:  July 26, 2017

REVERSED AND RENDERED

Appellant C.A.U.S.E. (A Texas Unincorporated Nonprofit Association) appeals the trial court's order granting the motion for summary judgment filed by Village Green Homeowners Association, Inc. as well as the order denying the partial motion for summary judgment filed by C.A.U.S.E.  The underlying issue is whether the homeowners association was authorized to compel the owners and residents within the subdivision to use and pay for a particular waste and recycling collection provider to the exclusion of all other service providers.  We reverse and render.

**BACKGROUND**

Village Green is a subdivision located in northwest Bexar County. The Village Green Homeowners Association (alternately referred to as "Village Green" or "the Association") was formed on January 12, 1998. The Association is managed by its Board of Directors ("the Board"). Since its formation, the Association has required each individual owner/resident in the subdivision to acquire and pay for their own garbage collection/disposal services. Such requirement was established in the Association's Declaration of Covenants, Conditions, and Restrictions ("the Declaration") and has been the Association's policy since the Declaration was filed of record on January 14, 1998. Paragraph 3.20 of the Declaration reads:

> Rubbish, Trash and Garbage.
>
> 3.20. No Lot shall be used or maintained as a dumping ground for rubbish or trash. All garbage and other waste shall be kept in sanitary containers appropriately screened from view. There shall be no burning or incineration of trash, garbage, leaves, brush, or other debris on any Lot. **All refuse garbage and trash shall be collected or disposed of by Owner, at his expense.** In the event the Owner fails or refuses to keep, or cause to be kept, Owner's Lot or any improvements thereon free from rubbish or debris of any kind, and such failure or refusal shall continue for fifteen (15) days after delivery of written notice thereof to Owner, then the Association may enter upon such Lot and remove or correct the same at the expense of the Owner and such entry shall not be deemed a trespass. (emphasis added).

In early 2014, a Village Green resident approached the Board and suggested that it consider requiring all residents to use a single trash collection company. Because residents contracted with different companies, there was not a singular day on which garbage collection occurred and trucks from different companies entered the subdivision on different days to collect trash and recycling. The Board directed a homeowner volunteer to research several different waste collection services; Vaquero Waste & Recycling was eventually determined to be the least expensive provider. The proposal to move to a single garbage collection company was discussed at Association board

meetings in March, April, May, June, July, and September 2014. Village Green also consulted an attorney about the propriety of the proposal.

At the November 19, 2014 Board of Directors meeting, the Board voted to select a single garbage collection company and to adopt Vaquero's proposal. Thereafter, Village Green entered into a "Waste Collection Contract" with Vaquero, having an effective date of March 10, 2015. The contract provides that Vaquero is the sole and exclusive provider of waste collection services to Village Green Homeowners Association and requires individual residents to pay for waste collection services directly to Vaquero. The contract was signed by Association president Stephen Grant. Prior to entering into the contract, in December 2014, residents were informed by Village Green that they needed to make arrangements with Vaquero for trash collection by April 1, 2015; the deadline was later extended to April 30, 2015. Village Green also provided residents with information on how to change their collection provider to Vaquero. Although the Declaration provides a mechanism for amendment, Paragraph 3.20 was not amended.[1]

After the resolution was passed, members of the Board allegedly engaged in repeated harassment to prevent other waste disposal companies from fulfilling their contracts with other residents in the community. On or around March 31, 2015, the Association altered the gate codes in order to prohibit other waste management/recycling companies from entering the subdivision. As a result, some of the homeowners' waste management services became difficult and irregular, and effectively ceased to exist.

---

[1] Paragraph 8.9(b) of the Declaration provides that the Declaration may be amended provided that "such amendment has been approved by the Members entitled to cast at least sixty-seven percent (67%) of the number of votes entitled to be cast pursuant to Section 5.5 hereof."

Thereafter, C.A.U.S.E.[2] sued Village Green asserting the following causes of action: tortious interference with existing contract; tortious interference with prospective business relations; interference with plaintiff's easement right of ingress and egress; negligence; breach of the Texas Free Enterprise and Antitrust Act; and breach of restrictive covenants. In addition, C.A.U.S.E. sought declaratory relief[3] and requested attorney's fees.

In response, Village Green filed an answer and counterclaim for reasonable expenses, attorney's fees, and costs. Village Green then filed a partial motion to dismiss. Village Green asked the trial court to dismiss all of C.A.U.S.E.'s claims except for its declaratory judgment action, asserting that C.A.U.S.E. lacked standing to bring the claims on behalf of its members. After a hearing on the partial motion to dismiss, the trial court found there was a defect in parties in that C.A.U.S.E. failed to experience any damages that would allow it to maintain many of the causes of action[4] it alleged in its original petition. The trial court therefore ordered C.A.U.S.E. to amend its petition to include persons who have proper standing as party plaintiffs before March

---

[2] C.A.U.S.E. was created specifically for the purpose of hiring an attorney and bringing the lawsuit at issue to enforce the applicable Restrictive Covenants within the Village Green subdivision.

[3] Specifically, C.A.U.S.E. sought the following declarations:
  (1) the Resolution adopted by the Village Green board of directors is "arbitrary, capricious and discriminatory," and is therefore void and of no effect;
  (2) Plaintiff's freedom to choose their own waste disposal service, and pay for same, is not in violation of any applicable restrictive covenants;
  (3) Plaintiff's properties are in compliance with the restrictions as of the date of the filing of this lawsuit;
  (4) all of the Defendant's denials to Plaintiffs of their right to choose their own waste management company for their own respective property with the Village Green subdivision is/are void and of no effect, and further, are not entitled to be presumed reasonable; and
  (5) any "guidelines" or "Resolutions" to the extent they are more restrictive than the Restrictions, are not binding or enforceable by the Defendant Association against its members or their respective properties within the Village Green subdivision.

[4] 1. Tortious interference with existing contract; 2. tortious interference with prospective business relations; 3. interference with easement/right of ingress/egress; and 4. Negligence.

31, 2016.[5] Further, the trial court ordered the parties to file motions concerning the "threshold" issues of law in the case. The trial court identified the "threshold" issues as:

1. Whether the Defendant has the authority to compel owners or residents within the Village Green subdivision to use the services of a service provider chosen by the Defendant's Board of Directors; and
2. If the first issue is determined in the negative, whether the Defendant's act in that regard is, as a matter of law, a "per se" violation of Chapter 15 of the Texas Business and Commerce Code.[6]

The Honorable David A. Canales, presiding judge of the 73rd Judicial District Court, Bexar County, Texas, signed an order containing these findings on January 27, 2016.

Thereafter, on February 23, 2016, both parties filed motions for summary judgment. C.A.U.S.E. filed a "Motion for Determination of Law Pursuant to Rules 175 and 248 of the Texas Rules of Civil Procedure and/or Alternatively Traditional Motion for Partial Summary Judgment." Village Green filed a traditional motion for final summary judgment.

In its motion, C.A.U.S.E. sought a determination, pursuant to Rules 175 and 248 of the Texas Rules of Civil Procedure, as to whether: 1) Village Green has the legal authority to compel individual homeowners within the subdivision to contract with a particular service provider; and 2) if Village Green has no such legal authority, then whether the Association's actions in that regard operate as a "per se" violation of Chapter 15 of the Texas Business and Commerce Code. Alternatively, C.A.U.S.E. asserted that it was entitled to summary judgment on its declaratory judgment request that Village Green did not have the authority to compel individual homeowners to contract with a particular service provider.

---

[5] C.A.U.S.E. filed its First Amended Original Petition on March 3, 2016.

[6] Chapter 15 of the Texas Business and Commerce Code contains the Texas Free Enterprise and Antitrust Act. TEX. BUS. & COM. CODE ANN. ch. 15 (West 2011 & Supp. 2016).

Village Green moved for summary judgment on the two threshold issues found by the trial court. Village Green argued that pursuant to the governing documents, including the Declaration, the Association through its Board had the authority to implement rules and regulations to manage and maintain common areas, including roads and streets, in the subdivision. Village Green argued that the Board's motivations to change the waste collection policy included reducing trash truck traffic in the neighborhood, improving safety on Village Green roads, lowering the appearance of trash bins on streets to once a week, lessening wear and deterioration of neighborhood roads, and decreasing street maintenance costs for the neighborhood. In addition, Village Green argued that the Association through its Board had the right to delegate their powers and to enter into contracts with third parties. Further, Village Green argued that it was entitled to a presumption that its actions regarding the trash collection policy were reasonable pursuant to section 202.004(a) of the Texas Property Code. TEX. PROP. CODE ANN. § 202.004(a) (West 2014).

Village Green further argued that it did not violate Paragraph 3.20 of the Declaration because the provision does not provide that homeowners may choose their waste and recycling company. It also does not state that homeowners have a right to contract with the collection company of their choice. It merely states the collection or disposal of garbage and trash is to be performed by homeowners and that homeowners must pay for the collection or disposal. Finally, in the summary judgment motion, Village Green argued that it was not required to amend the Declaration's waste collection policy before entering into the contract with Vaquero because Paragraph 8.9(b) of the Declaration provides that amendment is optional, not mandatory.

Village Green moved for summary judgment on the remaining claims of tortious interference with existing contract; tortious interference with prospective business relations; interference with plaintiff's easement right of ingress and egress; negligence; breach of the Texas Free Enterprise and Antitrust Act; and breach of restrictive covenants. Because all of those claims

were contingent on a finding that Village Green's actions were harmful, and because Village Green alleged it had the authority under its governing documents to require residents to use Vaquero for waste and recycling collection and to enter into a contract with Vaquero without amending the governing documents, Village Green argued that it was entitled to judgment as a matter of law on the remaining claims.

On March 14, 2016, after responsive pleadings were filed and a hearing was held on both motions, the trial court issued a letter ruling denying C.A.U.S.E.'s motion and finding that, pursuant to Judge Canales's January 27, 2016 order, "the Defendant has the authority to compel owners or residents within the Village Green subdivision to use the services of a service provider chosen by Defendant's Board of Directors." The trial court abated its decision on Village Green's traditional motion for final summary judgment until after March 31, 2016 to give C.A.U.S.E. the opportunity to amend its pleadings.

On April 4, 2016, Village Green filed a "Supplement to its Traditional Motion for Final Summary Judgment" arguing that C.A.U.S.E. failed to amend its pleadings to cure its standing defects and therefore its claims for tortious interference with existing contract, tortious interference with prospective business relations, interference with easement right of ingress and egress, and negligence should be dismissed for lack of standing. In addition, the supplemental motion requested dismissal of C.A.U.S.E.'s claims for declaratory relief, breach of the Texas Free Enterprise and Antitrust Act, and breach of restrictive covenants.

Thereafter the trial court signed two orders. In the "Order Determining Threshold Issues and Denying Plaintiff's Traditional Motion for Partial Summary Judgment," the trial court incorporated by reference its March 14, 2016 letter ruling that Village Green has the authority to compel owners or residents to use the services of a service provider chosen by the Board of Directors and also denied C.A.U.S.E.'s motion for partial summary judgment. In the "Order

Granting Defendant Village Green Homeowners' Association, Inc.'s Traditional Motion for Summary Judgment," the trial court granted Village Green's motion for summary judgment in its entirety and further denied Village Green's request for attorney's fees; it also incorporated by reference the order signed on January 27, 2016. It is from these two orders that C.A.U.S.E. appeals.[7]

### SUMMARY JUDGMENT STANDARD OF REVIEW

We review *de novo* a trial court's ruling on a motion for summary judgment. *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166(a)(c); *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). In reviewing a summary judgment, we must resolve any doubt and indulge every reasonable inference in the nonmovant's favor. *Grizzle,* 96 S.W.3d at 252. All evidence favorable to the nonmovant will be taken as true. *Id.* When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### INTERPRETATION OF RESTRICTIVE COVENANTS

A declaration containing restrictive covenants in a subdivision defines the rights and obligations of property ownership, and the mutual and reciprocal obligation undertaken by all

---

[7] On appeal, C.A.U.S.E. does not challenge the dismissal of its claims for tortious interference with existing contract, tortious interference with prospective business relations, interference with easement right of ingress and egress, or negligence; in addition, C.A.U.S.E. does not brief the issue of attorney's fees, and thus waives its request for attorney's fees on appeal.

purchasers in a subdivision "creates an inherent property interest possessed by each purchaser." *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987); *see also Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (a subdivision's deed restrictions are considered to be "restrictive covenants concerning real property"). Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 220-21 (Tex. App.—El Paso 2017, no pet.). Section 202.003 of the Texas Property Code expressly states that a "restrictive covenant shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE ANN. § 202.003(a) (West 2014); *see also Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied). As when interpreting any contract, our primary duty in construing a restrictive covenant is to ascertain the parties' intent from the instrument's language. *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 708 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). In doing so, we construe the language of the restrictions to give effect to their purposes and intent and to harmonize all of the provisions so that none are rendered meaningless. *Rakowski v. Committee to Protect Clear Creek Village Homeowners' Rights*, 252 S.W.3d 673, 676 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). We give a restrictive covenant's words and phrases their commonly accepted meaning. *Truong v. City of Houston*, 99 S.W.3d 204, 214 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We review a trial court's interpretation of restrictive covenants *de novo*. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 510 S.W.3d 725, 728 (Tex. App.—San Antonio 2016, pet. filed); *Buckner*, 133 S.W.3d at 297.

## DISCUSSION

On appeal, C.A.U.S.E. complains the trial court erred in determining that Village Green has the authority to compel owners or residents within the subdivision to use Vaquero's services

and to deny other service providers access to the subdivision, and as such, erred in granting Village Green's traditional motion for summary judgment and in denying C.A.U.S.E.'s motion for determination of law and/or partial motion for summary judgment. Paragraph 3.20 of the Declaration provides:

> No Lot shall be used or maintained as a dumping ground for rubbish or trash. All garbage and other waste shall be kept in sanitary containers appropriately screened from view. There shall be no burning or incineration of trash, garbage, leaves, brush, or other debris on any Lot. **All refuse garbage and trash shall be collected or disposed of by Owner, at his expense.** In the event the Owner fails or refuses to keep, or cause to be kept, Owner's Lot or any improvements thereon free from rubbish or debris of any kind, and such failure or refusal shall continue for fifteen (15) days after delivery of written notice thereof to Owner, then the Association may enter upon such Lot and remove or correct the same at the expense of the Owner and such entry shall not be deemed a trespass. (emphasis added).

Mere disagreement over the interpretation of a provision does not make it ambiguous. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981); *Hodas v. Scenic Oaks Prop. Ass'n*, 21 S.W.3d 524, 528 (Tex. App.—San Antonio 2000, no pet.). When we consider the plain language of Paragraph 3.20, the meaning is clear and unambiguous. *See Pilarcik*, 966 S.W.2d at 478-79 (construing language at issue in light of the restrictions as a whole); *Hodas*, 21 S.W.3d at 530 (same). Words used in a restriction may not be "enlarged, extended, stretched or changed by construction" but "will be given their commonly accepted meaning." *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). Even if it could be argued that Paragraph 3.20 contains an ambiguity or doubt as to the intent of the Declaration's framers, restrictive covenants are to be construed in favor of the free and unrestricted use of the premises. *See Munson v. Milton*, 948 S.W.2d 813, 816 (Tex. App.—San Antonio 1997, pet. denied). Hence, we would resolve any ambiguity in favor of the least restrictive interpretation. When a contract is not ambiguous, the construction of the written instrument is a question of law for the court. *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In light of the clear language in this case,

we conclude that individual homeowners are the ones who are to arrange for and pay for trash collection.

Village Green contends the Association has the authority to compel the residents to use one trash provider because the Declaration grants it the duty to operate, maintain, and manage the common areas of the subdivision, which includes the neighborhood streets. In support, it cites to provisions of the Declaration and other governing documents, including the Association's articles of incorporation and bylaws, allowing it to promote the health, safety, and welfare of the subdivision. Village Green also points out that the Declaration permits the Association to make contracts with third parties to provide services to the Association with respect to security and maintenance of the neighborhood. Village Green asserts that in forcing residents to use a single trash collector, it is complying with its duty to manage and maintain the neighborhood streets. We disagree that these general provisions render Paragraph 3.20—the only covenant pertaining to trash collection—superfluous. More specific provisions in a contract prevail over general mandates. *In re Lee*, 411 S.W.3d 445, 455 (Tex. 2013); *Houston Laureate Assocs., Ltd. v. Russell*, 504 S.W.3d 550, 559 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Thus, we are not persuaded that the provisions generally relating to maintenance of the common areas allow the Association to compel residents to use a single trash collector selected by the Board.

Reading the Declaration in its entirety, we see no clearly worded intent expressly allowing the Board to choose one trash collector for the entire neighborhood to the exclusion of all others. We thus hold that the Association failed to establish as a matter of law that it has the right to compel residents to contract with a single trash collector chosen by the Board.

CONCLUSION

Because Village Green failed to establish as a matter of law that it had the authority to compel residents to contract with a single waste collection provider chosen by the Board, the trial

court erred in granting summary judgment in favor of Village Green and in denying C.A.U.S.E.'s motion. *See* TEX. R. CIV. P. 166a(c). We therefore reverse the judgments of the trial court, and render judgment that, based on the record before us, the Association does not have the authority to compel owners or residents within the subdivision to use the services of a service provider chosen by the Board of Directors.

Rebeca C. Martinez, Justice