**Reversed and Remanded and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00349-CV

**LARRY BONTEKOE, ANITA BONTEKOE, CHRISTOPHER BONTEKOE, COASTAL PROPERTIES LIMITED PARTNERSHIP, AND BONTEKOE, INC., Appellants**

**V.**

**CHRISTOPHER WITTE, SUSAN WITTE, JOHN BRANTON, DAVID DALE, RHONDA DALE, TAD PUCKETT, TAMMI PUCKETT, KERRY MCGOVERN, NANCY MCGOVERN, AND DAVID DALE CONSTRUCTION, LLC, Appellees**

**On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Cause No. 112406-CV**

### MEMORANDUM OPINION

This appeal arises out of a legal dispute over control and operation of a property owners' association known as the Bridge Pointe Property Owners' Association, Inc. Appellants Larry Bontekoe, Anita Bontekoe, Christopher Bontekoe, Coastal Properties Limited Partnership, and Bontekoe, Inc. (collectively,

the Bontekoe parties) appeal the judgment of the trial court, which provided a multitude of granular declarations cumulatively removing the Bontekoe parties from the control and operation of the property owners' association and stripping them of voting rights. Concluding the trial court erred by rendering summary judgment which required interpretation and construction of an ambiguous contract, we reverse the judgment of the trial court and remand for further proceedings.

## I. BACKGROUND

Coastal Properties, L.P. purchased a tract of land in Brazoria County consisting of approximately 123.3 acres. The general partner of Coastal Properties, Larry Bontekoe, intended to develop a "well-planned" real-estate development including residential, commercial, recreational, and open-space land. In 2005, Coastal Properties recorded a Declaration of Covenants, Restrictions, Easements, Charges and Liens (the Declaration) for this community, which Coastal Properties called "Bridge Pointe," then located in unincorporated Brazoria County.

Although the Declaration was written with the intent to ultimately encumber much of the 123-acre property, this lawsuit arises because the Declaration appears only to encumber a 9.641-acre tract. The Declaration reflects that additional acreage could be annexed to become part of the Bridge Pointe subdivision (the Subdivision) and subject to the restrictions and covenants in the Declaration. The 9.641 acres made part of the Subdivision was subdivided into nine lots. After recording the Declaration, Coastal Properties sold off all nine of the lots.

Until 2021, the Subdivision was apparently governed by an unincorporated property owners' association (POA) and there is little in the record about the management of the Subdivision during that time. However, in 2021, a certificate of formation was filed for Bridge Pointe Property Owners Association, Inc. The board of directors as named in the certificate was Larry, his wife Anita Bontekoe, and

2

their son Christopher Bontekoe.[1]

Shortly after it was incorporated, the POA sent out notices to each member with a 2021 annual assessment. Appellees Christopher Witte, Susan Witte, John Branton, David Dale, Rhonda Dale, Tad Puckett, Tammi Puckett, Kerry McGovern, Nancy McGovern, and David Dale Construction, LLC, (Bridge Pointe Owners) sought access to the records of the POA under Texas law and expressed dissatisfaction with the management of the POA. As alleged by the Bridge Pointe Owners, no meetings or elections were held and there was no transparency as to the management of the POA. Because of their continuing frustrations, the Bridge Pointe Owners filed suit to address the management and control of the POA.

In their suit, the Bridge Pointe Owners sought declaratory relief in the form of a multitude of granular declarations construing and, in some cases, rewriting the Declaration, to preclude Larry and Coastal Properties from having any management or voting rights in the POA. *See* Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001–.011. The Bridge Pointe Owners also sought relief under Business Organizations Code section 22.512, which creates a cause of action for the judicial determination and ratification of defective corporate acts. Tex. Bus. Orgs. Code Ann. § 22.512. The trial court granted the relief requested by the Bridge Pointe Owners in two separate traditional summary-judgment motions, awarding declaratory relief and attorney's fees. Appellants bring this appeal from the final judgment of the trial court, which incorporated the declaratory relief from the two interlocutory summary-judgment orders.[2]

---

[1] Because they share a common last name, we will refer to the Bonetekoes by their first names to avoid confusion.

[2] The final judgment "actually disposes of all claims and parties then before the court." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001).

## II. ANALYSIS

In issue 1, appellants argue the trial court erred in granting the Bridge Pointe Owners' first motion for summary judgment.

In the trial court (and here), the Bridge Pointe Owners argued that the Declaration defines the Subdivision as only the 9.641 acres specifically described in the plat map filed by Coastal Properties. Therefore, the Bridge Pointe Owners maintained that Property Code chapters 202, 204 and 209 were applicable to the Subdivision. Because of their application, the Bridge Pointe Owners further argue that Larry and Coastal Properties were precluded from having any management or voting rights in the POA.

In opposition, the Bontekoe parties argue that the Declaration specifically provides that Coastal Properties will have voting rights in the POA and will manage the POA, with or without the ownership of any property specifically subject to the Declaration. The Bontekoe parties argue that Coastal Properties' voting rights and control of the POA remain in place until the entire 123-acre development is complete. Therefore, they argue Coastal Properties, and its appointed board members, cannot simply be removed and divested of power as the Bridge Pointe Owners suggest.

The arguments raised by both sides require interpretation and construction of the Declaration, the dedicatory instrument defining the rights and duties of members in the POA. *See* Tex. Prop. Code Ann. § 209.002 (1) ("'Dedicatory instrument' means each governing instrument covering the establishment, maintenance, and operation of a residential subdivision."); Tex. Prop. Code Ann. § 215.001 (definition of dedicatory instrument for mixed-use property owners' association has the same meaning assigned by section 209.002).

4

## A.    Standard of review

We review a trial court's rendition of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

## B.    Construction of written agreements

Much of the declaratory relief in the final judgment requires construction of the Declaration. The interpretation of the governing documents of a property owners' association is subject to the general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *C.A.U.S.E. v. Vill. Green Homeowners Ass'n, Inc.*, 531 S.W.3d 268, 274 (Tex. App.—San Antonio 2017, no pet.); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The court's primary duty is to ascertain the drafter's intent from the instrument's language. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) ("A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the restrictive covenant as it is reflected in the language chosen."). We review a trial court's interpretation of the governing documents de novo. *Uptegraph*, 312 S.W.3d at 925; *see also Timberwood Park,* 556 S.W.3d at 279.

We consider the entire writing and attempt to harmonize and give effect to

all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Webster*, 128 S.W.3d at 229. When a contract contains an ambiguity, rendering summary judgment based on the contract is improper because the intent of the contracting parties is an issue of fact. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

If we are unable to harmonize the provisions and give effect to all its clauses, the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *Frost Nat'l Bank*, 165 S.W.3d at 312. If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous; then, courts should construe it as a matter of law. *Id*. A court may conclude a contract is ambiguous even in the absence of such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

## C.    The first partial summary judgment

### 1.  Property subject to the Declaration

The recitals of the Declaration begin with the statement that Coastal Properties is the sole owner of a tract of land containing 9.641 acres, which is part of a larger tract of land. Although the Declaration explains the Subdivision is intended to contain more than 9.641 acres, initially only "the lands described in attached Exhibit A" are subject to and encumbered by the Declaration. However,

6

the copy attached as summary-judgment evidence does not include an Exhibit A.[3]

In the recitals, the Declaration states that "[Coastal Properties] intends to cause the covenants, restrictions, easements, charges, liens and other provisions contained in these Covenants to burden, affect, bind and run with title to the lands encumbered by these Covenants, including the lands described above, (the 'Property')." This statement appears to reference the "lands described in attached Exhibit A" from the paragraph above.

The Declaration further defines the term "Property" as:

> All land described above, together with all existing or subsequent structures or improvements thereon, and any unit in a condominium located on any portion of the land described in this paragraph, and [] from and after the date of such annexation, each parcel of land which has been added to the land subject to these Covenants pursuant to the provisions of Section 6.02 hereof, together with all existing or subsequent Structures or improvements thereon, and any unit in a condominium located on any portion of the land described in this paragraph.

The Declaration does not clarify which lands are considered part of the Property, nor does it contain a description of the land described in Exhibit A. Although the Bridge Pointe Owners assert, and the Bontekoe parties do not appear to dispute, that Exhibit A to the Declaration is the plat map they attach as a separate summary-judgment exhibit reflecting the nine lots on 9.641 acres, there is no summary-judgment evidence of this. If Exhibit A was filed with the Declaration

---

[3] File No. 2005053605 of the Official Records of Brazoria County, Texas is the plat map describing the 9.641 acres, but there is no provision in the Declaration defining the Property globally based on that file number or plat map. There is a provision in the Declaration that defines "the Property" to mean the subdivision recorded under Brazoria County Clerk's File No. 2005053605 of the Official Records of Brazoria County, Texas." However, this definition is made applicable only to section 21 which addresses annexation by the City of Oyster Creek. Therefore, there is no internal consistency as to the property subject to the Declaration.

but omitted as summary-judgment evidence, then there is a fact issue as to what lands constitute the "Property" subject to the Declaration. If the Declaration, as filed, contained no Exhibit A, then the Declaration is ambiguous because there is no internal description within the Declaration as to the lands encumbered. Further, even were "Property" to be clearly defined, there are conflicting provisions regarding whether Coastal Properties must own a tract of land to vote and control the POA or whether the Declaration provides Coastal Properties with voting rights and control irrespective of ownership of property subject to the Declarations. The intent of the parties as expressed in the Declaration (and to which all the Bridge Pointe Owners bought their property subject to) must be determined; and because the contract is ambiguous, the intent is a fact issue.[4]

## 2. Effect on requested declaratory relief

The remainder of the declaratory-relief granted on summary judgment was improper because it was all based on the premise that the "Property" encumbered by the Declaration was unambiguous and could be determined as a matter of law to be nine residential lots represented on the plat map included in the summary-judgment evidence. Similarly, the premise that Coastal Properties possessed no voting rights under the Declaration because it sold all nine of the lots on the initial plat map was foundational to all the relief sought by the Bridge Pointe Owners.[5]

---

[4] The parties' arguments also raise other potential ambiguities in the Declaration, which we need not address here as we have already concluded summary judgment was improper. However, the parties must address any other contractual ambiguities in the trial court as well.

[5] The Declaration provides for a voting-rights scheme that provides only members have voting rights. The Declaration further specifies that in order to be a member, a person or entity must own a tract of property within the POA. However, there several provisions that conflict with that voting-rights scheme suggesting that Coastal Properties was intended to have voting rights irrespective of property ownership. For example, section 7.01 states: "Class A Members shall be all Owners (other than [Coastal Properties]). The Class B Member shall be [Coastal

In sum, the summary judgment was improper because the Bridge Pointe Owners did not establish as a matter of law the real property comprising the "Property" in the Declaration as a matter of law. Nor did they establish as a matter of law that the Declaration precluded any voting or control rights for Coastal Properties, Larry, or Anita.[6]

We sustain issue 1.

## D.    The second partial summary judgment

The Bontekoe parties filed a counter-petition against the Bridge Pointe Owners arguing that certain Bridge Pointe Owners had violated the restrictive covenants in the Declaration. Therefore, the Bontekoe parties sought declarations that (1) the Bridge Pointe Owners were in violation of restrictive covenants, (2) the violations would cause harm to Coastal Properties, and (3) Coastal Properties had the authority to enforce the deed restrictions contained in the Declaration.[7]

After receiving the declaratory relief they requested in the first partial summary judgment, the Bridge Pointe Owners filed a second motion for partial summary judgment seeking a take-nothing judgment on the Bontekoe parties' counterclaims because "the legal issues on which the declaratory judgment counter-claims are based have already been decided" in the Bridge Pointe Owners'

---

Properties], and its successors or assigns." Section 18.03 states "The developer shall run and operate the POA until 60% of the planned development of the whole 123 acres is developed. The developer may relinquish control to the Property Owners Association at any time." We further note that the term developer is not defined in the Declaration, but based on the context of other provisions appears to be a reference to Coastal Properties.

[6] The trial court's final judgment was unusual, making 57 "findings of fact" relating to "undisputed facts." We need not address the propriety of the 57 findings given our treatment of issue 1.

[7] Although initially Larry, Anita, and Coastal Properties brought claims against the Bridge Pointe Owners, Larry and Anita later dismissed their claims against the Bridge Pointe Owners.

9

favor.

Because the relief requested by the Bridge Pointe Owners was premised entirely on the trial court having already decided the issues raised in the Bontekoe parties' claim, we conclude the trial court erred in rendering the relief requested in the Bridge Pointe Owners' second partial summary-judgment motion.

We sustain issue 2.

### III. CONCLUSION

We reverse the final judgment of the trial court and remand the case to the trial court for further proceedings.


/s/    Charles A. Spain
      Justice


Panel consists of Justices Wise, Spain, and Hassan.